## COURT OF APPEALS,
## Feb. 15, 1915.

### THE PEOPLE v. C. KLINCK PACKING CO.

(214 N. Y. 121.)

(1.) LABOR LAW—ONE DAY OF REST IN SEVEN—CONSTITUTIONAL, AS EXERCISE OF POLICE POWER.

The statute (Labor Law [L. 1913, ch. 740], § 8a) which, with certain exceptions and subject to certain qualifications, provides that every employer carrying on any factory or mercantile establishment shall allow every person employed in such factory or mercantile establishment at least twenty-four consecutive hours of rest in every seven consecutive days, is a valid exercise of the police power of the state for the promotion and protection of the public health and welfare. (Lochner v. New York, 198 U. S. 45, distinguished.)

(2.) SAME—ITS PROVISIONS ARE REASONABLE, FAIR AND APPROPRIATE.

The provisions of the statute on its face are reasonable, fair and appropriate, and it can fairly be believed that its natural consequences will be in the direction of betterment of public health and welfare, and, therefore, that it is one which the state for its protection and advantage may enact and enforce.

(3.) SAME.

Certain exemptions from the provisions of the statute, of employees expressly specified (L. 1914, chs. 388, 396, 512), are based on obvious reasons and grounds of classification, and the classification and exemptions thereby made are not subject to condemnation from a constitutional standpoint as discriminatory.

1

(4.) SAME.

> The legislature, however, cannot secure relief from its duties and
> responsibilities by a general delegation of legislative power to some
> one else, and hence the provision of the statute (L. 1914, ch. 396),
> which exempts "Employees, if the commissioner of labor in his
> discretion approves, engaged in the work of any industrial or manu-
> facturing process necessarily continuous, in which no employee is
> permitted to work more than eight hours in any calendar day," is
> unconstitutional because of the attempt which the legislature has.
> made to delegate its powers to the commissioner of labor and to permit
> him to determine without any guide whether the provision shall take
> effect.   But since this particular provision by way of amendment is
> not so connected with the general scope and purpose of the legislation
> that its imperfections totally destroy the latter, the original statute
> may stand even though this provision falls as invalid.
>
> People v. Klinck Packing Co., 164 App. Div. 97, affirmed.

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered October 22, 1914, affirming a judgment of the Erie County Court which affirmed three judgments of the City Court of Buffalo convicting the defendant of violating section 8a of the Labor Law.

During the month of December, 1913, the defendant was engaged in operating within the city of Buffalo a plant and factory for the killing of hogs and the preparation of meats in various forms for consumption.   During that time it caused or permitted some of its employees specified in said section of the Labor Law to work for seven days or more consecutively without any day of rest, in violation of the provisions of said section, which at the time in question provided as follows:

" § 8-a.   One day of rest in seven.—(1)   Every employer of labor engaged in carrying on any factory or mercantile establishment in this state shall allow every person, except those specified in subdivision two, employed in such factory or mercantile establishment at least twenty-four consecutive hours. of rest in every seven consecutive days.   No employer shall operate any such factory or mercantile establishment on Sun--

day unless he shall have complied with subdivision three. Provided, however, that this section shall not authorize any work on Sunday not now or hereafter authorized by law.

" (2) This section shall not apply to

" (a) Janitors;

" (b) Watchmen;

" (c) Employees whose duties include not more than three hours' work on Sunday in (1) Setting sponges in bakeries; (2) Caring for live animals; (3) Maintaining fires; (4) Necessary repairs to boilers or machinery.

" (d) Superintendents or foremen in charge.

" 3. Before operating on Sunday, every employer shall post in a conspicuous place on the premises a schedule containing a list of his employees who are required or allowed to work on Sunday and designating the day of rest for each, and shall file a copy of such schedule with the commissioner of labor. The employer shall promptly file with the said commissioner a copy of every change in such schedule. No employee shall be required or allowed to work on the day of rest so designated for him.

" 4. Every employer shall keep a time-book showing the names and addresses of all employees and the hours worked by each of them in each day, and such time-book shall be open to inspection by the commissioner of labor.

" 5. The industrial board at any time when the preservation of property, life or health requires, may except specific cases for specified periods from the provisions of this act by written orders which shall be recorded as public records."

*August Becker* and *J. Ralph Ulsh* for appellant.

The police power is subordinate to the exercise and enjoyment of those rights secured by our Constitutions. (South Carolina v. United States, 199 U. S. 437; Matter of Jacobs, 98 N. Y. 98;

Fisher Co. v. Woods, 187 N. Y. 90; Colon v. Lisk, 153 N. Y. 188; People v. Budd, 117 N. Y. 1; Health Department v. Rector, etc., 145 N. Y. 32; Village of Carthage v. Frederick, 122 N. Y. 268; Lawton v. Steele, 152 U. S. 133.) Section 8a of the Labor Law violates the constitutional provisions securing to citizens their liberty and property and freedom to contract. (Const. of N. Y. art. 1, § 1; U. S. Const. 14th Amend.; People v. Marcus, 185 N. Y. 257; Adair v. United States, 208 U. S. 161; Lochner v. New York, 198 U. S. 45; People v. Kane, 79 Misc. Rep. 140; Muller v. Oregon, 208 U. S. 412; Schnaier v. Navarre H. & I. Co., 182 N. Y. 83.) The statute denies to a large number of citizens the equal protection of the laws, privileges and immunities accorded to others. (People ex rel. W. E. & C. Co. v. Metz, 193 N. Y. 148; People ex rel. W. A. Co. v. Murphy, 195 N. Y. 126; People v. O. C. R. Const. Co., 175 N. Y. 84; Gulf C. & S. F. R. Co. v. Ellis, 165 U. S. 150; Connolly v. U. S. Pipe Co., 184 U. S. 540.)

*Wesley C. Dudley, District Attorney* (*Clifford McLaughlin* of counsel), for respondent.

The legislature had the power to designate a day as provided by the statute in question. (L. 1913, ch. 740; Bloom v. Richards, 2 Ohio St. 391; McGatrick v. Wason, 4 Ohio St. 566, 571; Specht v. Commonwealth, 8 Penn. St. 312; Commonwealth v. Has, 122 Mass. 40; Lindenmueller v. People, 33 Barb. 548; People v. Havnor, 149 N. Y. 195; Village of Carthage v. Frederick, 122 N. Y. 268; State ex rel. Walker v. Judge, 39 La. Ann. 136; Richmond v. Moore, 107 Ill. 429.) Under the police power of the state the legislature has the power to make such laws as are necessary to preserve the public health and protect the public safety. (Matter of Jacobs, 98 N. Y. 108; People v. Havnor, 149 N. Y. 199; State v. Nesbit, 8 Kans. App. 105; Phillips v. Racy, 60 N. Y. 10; Prentice v. Weston,

111 N. Y. 460; People v. Dunford, 207 N. Y. 21; Village of Carthage v. Frederick, 122 N. Y. 275.) Section 8a of the Labor Law is constitutional and does not violate the constitutional provisions securing to citizens their liberty and property and freedom to contract. (Daniels v. Hilgrade, 77 Ill. 640; Booth v. People, 186 Ill. 48; Hing v. Crowley, 113 U. S. 703; *Ex parte* Wong Wing, 51 L. R. A. [N. S.] 361; People v. Wells, 99 App. Div. 364; People v. Clark, 139 App. Div. 687; People v. Simpson, 181 N. Y. 257; People v. N. Y. C. & H. R. R. R. Co., 85 Misc. Rep. 489; People ex rel Nechamcus v. Warden, etc., 144 N. Y. 529; Miller v. Oregon, 208 U. S. 412.) The statute does not deny to a large number of citizens the equal protection of the laws and privileges and immunities accorded to others. (Hing v. Crowley, 113 U. S. 708; Hemmington v. State of Georgia, 163 U. S. 299.)

HISCOCK, J.:

This appeal presents as its underlying question the important one whether the legislature may require that in certain occupations employees shall have twenty-four consecutive hours of rest in every seven days. The statute which requires this has popularly come to be known as the " One day of rest in seven " law, and with certain exceptions and subject to certain qualifications it provides with appropriate penalties that every employer " carrying on any factory or mercantile establishment  *  *  *  shall allow every person  *  *  *  employed in such factory or mercantile establishment at least twenty-four consecutive hours of rest in every seven consecutive days."

It is undisputed that this defendant was conducting a factory within the meaning of this law and that it caused or permitted some of its employees to labor without the prescribed rest in violation of the terms of the statute. Its defense is based solely and squarely on the contention that the law is unconstitutional

and invalid. Its broad claim is that in attempting to limit the right of a male adult to contract for his labor in the pursuits named, the legislature violated the provisions of the Constitution both of the State and the United States which in substantially similar language provide that no person shall be deprived " of life, liberty or property without due process of law," and also the provisions of said Constitutions which respectively provide that " No member of this State shall be  *  *  * deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land, or the judgment of his peers," and " No state shall  *  *  *  deny to any person within its jurisdiction the equal protection of the laws."

We agree with the appellant that the statute cannot be sustained as one enforcing the religious observance of any day, but that it must be sustained, if at all, as a valid exercise of the police power of the state for the promotion and protection of the public health and welfare.

It is of course very familiar law that the legislature under its so-called police power may by enactments which really tend to accomplish such beneficial public purposes interfere in many and substantial ways with individual rights without being considered as in conflict with the constitutional safeguards which surround such individual. The doctrine that personal liberty must yield to what is supposed to be the public welfare has not waned any during recent years, and if the statute now before us comes within the principles which sanction and regulate such legislation it is not subject to the attack made upon its constitutionality. For the purpose of determining whether it is thus immune we shall first briefly consider its important features and purposes and the effects which it can be seen will naturally flow from its operation.

" The purpose of (such) a statute must be determined from the natural and legal effect of the language employed; and. whether it is or is not repugnant to the Constitution of the

United States must be determined from the natural effect of such statutes when put into operation and not from their proclaimed purpose." (Lochner v. New York, 198 U. S. 45, 64.)

We see at the outset that it is applicable only to certain classes of employees. But these are they who work in factories and mercantile establishments. We know as a matter of common observation that such labor is generally indoors and imposes that greater burden on health which comes from confinement many times accompanied by crowded conditions and impure air. Thus special conditions are presented which become a reasonable basis for special consideration.

Can we say that the provision for a full day of rest in seven for such employees. is so extravagant and unreasonable, so disconnected with the probable promotion of health and welfare that its enactment is beyond the jurisdiction of the legislature? Or does the very reverse seem to be its character? We have no power of decision of the question whether it is the wisest and best way to offset these conditions and give to employees the protection which they need even if we had any doubt on that subject. That question, as we have many times said in other similar cases, is for the legislature. Our only inquiry must be whether the provision on its face seems reasonable, fair and appropriate, and whether it can fairly be believed that its natural consequences will be in the direction of betterment of public health and welfare, and, therefore, that it is one which the state for its protection and advantage may enact and enforce. It seems to me very clear that we may answer that it is such an one.

The thought of one day of rest in seven has come down to us fortified by centuries of recognition. It is true that often it has been coupled with and perhaps subordinate to the desire for religious observance. But the idea of rest and relaxation from the pursuits of other days has also been present and whether we like it or not we are compelled to see that in more

recent times the feature of rest and recreation has been develop-
ing at the expense of the one of religious observance.

I suppose that no one would contend that continued and un-
interrupted indoor labor would be good even for an adult man.
The laws which have been passed and sustained with general
approval in almost every jurisdiction limiting the hours of
labor for women and children and for those engaged in especially
trying employments, such as mining and the operation of rail-
roads, amply testify to the widespread belief that in certain
fields the public health and welfare are subserved by generous
opportunities for relaxation and recuperation. A constantly
increasing study of industrial conditions I believe leads to the
conviction that the health, happiness, intelligence and efficiency
even of an adult man laboring in such employments as those
mentioned in this statute will be increased by a reasonable
opportunity for rest, for outdoor life and recreation, for atten-
tion to his own affairs, and, if he will, study and education.

Then we come to the question what is a reasonable oppor-
tunity, and within wide limits that problem is for the legislature.
Anybody would probably say that one day in thirty or sixty
would be too little and one day in each two days extravagant.
Between these extremes none can safely assert that the mean
adopted by the legislature of one day in seven is unreasonable.
In fact, historical and worldwide customs seem to make it a
natural one and we should not interfere with it.

In our opinion the views we thus entertain are supported
both by authorities prescribing general rules for the exercise
of the police power and by those dealing with this specific sub-
ject of health legislation for employees.

"To justify the State in thus interposing its authority in
behalf of the public, it must appear, first, that the interests of
the public generally, as distinguished from those of a particular
class, require such interference; and, second, that the means are
reasonably necessary for the accomplishment of the purpose

and not unduly oppressive upon individuals." (Lawton v. Steele, 152 U. S. 133, 137.)

" Unless the regulations [enacted by the state] are so utterly unreasonable and extravagant in their nature and purpose that the property and personal rights of the citizen are unnecessarily, and in a manner wholly arbitrary, interfered with or destroyed without due process of law, they do not extend beyond the power of the State to pass, and they form no subject for Federal interference." (Gundling v. Chicago, 177 U. S. 183, 188.)

" The law passed in the exercise of such [the police] power must tend    *    *    *    towards the preservation of the lives, the health, the morals or the welfare of the community,    *    *    *    the court must be enabled to see some clear and real connection between the assumed purpose of the law and the actual provisions thereof, and it must see that the latter do tend in some plain and appreciable manner towards the accomplishment of some of the objects for which the legislature may use this power." (Health Dept. v. Rector, etc., 145 N. Y. 32, 39.)

And on the subject of equal rights the constitutional rule is that " No person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in the same place and under like circumstances." (Missouri v. Lewis, 101 U. S. 22, 31.)

The case of Lindenmuller v. People (33 Barb. 548) considered and sustained the constitutionality of an act entitled one " to preserve the public peace and order on the first day of the week commonly called Sunday," and which prohibited certain exhibitions and performances. In his very able opinion, it is true that Judge ALLEN did discuss and use as a basis for his conclusion the purpose and effects of the statute in the interest of a religious observance of the Sabbath day. But he also, in a manner which in our opinion was not as claimed by

appellant irrelevant, based his conclusion on the proposition that " as a civil and political institution, the establishment and regulation of a Sabbath is within the just powers of the civil government " (p. 568), and the learned judge said: " It is a law of our nature that one day in seven must be observed as a day of relaxation and refreshment, if not for public worship. Experience has shown that the observance of one day in seven as a day of rest is of admirable service to a state, considered merely as a civil institution.   *   *   *   As a civil institution, the selection of the day is at the option of the legislature.   (p. 569.)   *   *   *   The existence of the sabbath day as a civil institution being conceded, as it must be, the right of the legislature to control and regulate it and its observance is a necessary sequence."   (p. 570.)

The reasoning of this decision has been amply approved by its repeated citation.

In People v. Havnor (149 N. Y. 195, 203) a majority of this court concurred in what was pertinently written by Judge VANN in the discussion of the so-called " Barber's Statute," as follows: " According to the common judgment of civilized men, public economy requires, for sanitary reasons, a day of general rest from labor.   *   *   *   Laws to effect this purpose, by protecting the citizen from overwork and requiring a general day of rest to restore his strength and preserve his health, have an obvious connection with the public welfare."

In Bloom v. Richards (2 Ohio St. 387, 391) there was involved the consideration of a statute prohibiting " common labor " on the Sabbath, and the validity of this law was upheld as a police regulation " whose validity is neither strengthened or weakened by the fact that the day of rest it enjoined is the Sabbath day," but because " Wisdom requires that men should refrain from labor at least one day in seven, and the advantages of having the day of rest fixed, and so fixed as to happen at regularly recurring intervals, are too obvious to be overlooked.

It was within the constitutional competency of the general assembly to require this cessation of labor, and to name the day of rest."

In Specht v. Commonwealth (8 Penn. St. 312, 323) the validity of a statute which prohibited " any worldly employment or business whatever on the Lord's day    *    *    *    works of necessity or charity alone excepted," was upheld, and again this was not done on the ground of enforcing religious observance of the day, but on the other ground that " All agree that to the well being of society periods of rest are absolutely necessary.    *    *    *    They may be established by common consent, or, as is conceded, the legislative power of the state may without impropriety, interfere to fix the time of their stated return and enforce obedience to that direction."

In Richmond v. Moore (107 Ill. 429, 436), in passing on the validity of a contract made on Sunday, it was said: " In all countries and ages,    *    *    *    governments have set apart days of rest, recurring at short periods.    This has been, and still is, regarded as necessary to the temporal welfare of the people, as a certain amount of rest is regarded as absolutely necessary to man and animals subjected to labor.    Considerations of public policy demanding such periods of rest, and the great body of Christians holding the observance of Sunday to be a religious duty, it is natural that the law making power should specify Sunday as the day of rest, thereby conforming public policy to religious sentiment.    But that Sunday is kept as a holy day by most Christian denominations neither adds to nor detracts from the validity of the enactment.    Had any other day of the week been selected, the enactment would have had the same binding force."

In Hennington v. Georgia (163 U. S. 299), the United States Supreme Court in upholding the determination of the state court of Georgia that a statute prohibiting the operation of freight trains on Sunday was valid, also adopted the reasoning

of that court, as follows: " There can be no well founded doubt of its being a police regulation, considering it merely as ordaining the cessation of ordinary labor and business during one day in every week; for the frequent and total suspension of the toils, cares and strain of mind or muscle incident to pursuing an occupation or common employment, is beneficial to every individual, and incidentally to the community at large, the general public  *  *  *  Short intervals of leisure at stated periods reduce wear and tear, promote health, favor ceanliness, encourage social intercourse, afford opportunity for introspection and retrospection and tend in a high degree to expand the thoughts and sympathies of people, enlarge their information and elevate their morals.  *  *  *  If a law which, in essential respects, betters for all the people the conditions, sanitary, social and individual, under which their daily life is carried on, and which contributes to ensure for each, even against his own will, his minimum allowance of leisure, cannot be rightfully classed as a police regulation, it would be difficult to imagine any law that could."

It will be observed that the validity of the statute was sustained without any reference to the religious character of the day which was set aside and without reliance upon any peculiar strain of the work prohibited.    (See, also, Commonwealth v. Has, 122 Mass. 40, 42; McGatrick v. Wason, 4 Ohio St. 566; Soon Hing v. Crowley, 113 U. S. 703, 710; Frolickstein v. Mobile, 40 Ala, 725; *Ex parte* Andrews, 18 Cal. 678; Scales v. State, 47 Ark. 476, 482; State v. Railroad Co., 24 W. Va. 783; State v. Ambs, 20 Mo. 214.)

The appellant especially relies on the case of Lochner v. New York (198 U. S. 45) as destroying the authority of these cases and as sustaining its contention that the present law is unconstitutional.    In the attempt to adapt it to the exigencies of political discussion that case has become somewhat famous as the so-called " Baker's Case."    It involved the constitutional

validity of a statute passed by the legislature of this state which, amongst other things, limited the hours of labor in bakeries and confectionery establishments, with one immaterial exception, to ten hours in a day and sixty hours in a week. Contrary to what has often been said, the law was upheld by all of the courts of this state but was finally pronounced to be unconstitutional by the Supreme Court of the United States by a bare majority.

While that statute of course was ·not entirely unlike the present one in its provisions and avowed purposes as a health measure, we think that it may be fairly and distinctly distinguished from the present one and that such distinction is entirely in accordance with what was written by Mr. Justice PECKHAM in behalf of the majority of the Supreme Court and serves to withdraw the present enactment from the effect of that decision as an adverse authority.

As will be observed, that law not only limited the amount of labor to be performed by the employees mentioned in seven days, like the present statute, but it also contained the added and substantial provision that no one of such employees should be allowed to work in excess of a certain number of hours during any day. In that respect it went further and was more exacting than the present statute, and a careful perusal of the opinion shows that its condemnation was directed against this feature of the limitation of the hours of labor from day to day rather than against the doctrine that the legislature might properly allow periodical cessation from all labor by prescribing a day of rest. Repeatedly in one form and another the court states that there was nothing about the employment of baking which required that in the interest of public health and welfare, employer and employee should be prohibited from agreeing on hours of labor in excess of those fixed by the statute if they saw fit. Nowhere, as I read the opinion, is anything said which condemns the principle that occasionally a

day of rest may be secured to employees if the legislature deem it wise so to do, and in the absence of express declaration to that effect it would not be reasonable to believe that the court intended to overthrow everything that had been stated and decided by the courts of various jurisdictions on that subject. Actually, as it seems to me, the decision indirectly at least approved what had been said by the Supreme Court itself in favor of such doctrine. Reference is made in the opinion without criticism or attempt at limitation to the case of Petit v. Minnesota (177 U. S. 164), which upheld a statute prohibiting all labor on Sunday excepting works of necessity or charity. It is true that Judge PECKHAM refers to it as upholding police legislation relating to the observance of Sunday. Whether this characterization of the case is entirely accurate or not, we find that the opinion in it fully reaffirmed what was decided in Hennington v. Georgia (163 U. S. 299), from the opinion in which latter case quotation has already been made showing that the statute there being considered was upheld as a valid exercise of police regulation in favor of periodical rest from labor and not at all as an enforcement of a religious observance of the Sabbath day.

We think, therefore, that the Lochner case wholly fails to subserve the purpose for which it has been selected by the appellant, and that as a matter of both reason and authority it was within the power of the legislature to provide for a day of rest as it did.

I now come to the consideration of special and subordinate features of the act which are attacked as unjustifiable and invalid. These in the statute as originally adopted are found in subdivisions 2 and 5, and in the definition of the word " factory." The first subdivision exempts from the application of the statute janitors, watchmen, employees whose duties include not more than three hours' work on Sunday in setting sponges in bakeries, caring for live animals, maintaining fires,.

making necessary repairs to boilers or machinery, supinten-
dents or foremen in charge. The second subdivision provides
that the industrial board may for definite periods except specific
cases from the operation of the statute when necessary for " the
preservation of property, life or health."

The definition of the word " factory " (as finally amended in
1914, L. 1914, ch. 512) has the effect of excepting employees
in " power houses, generating plants, barns, storage houses,
sheds and other structures owned or operated by a public
service corporation, other than construction or repair shops
subject to the jurisdiction of the public service commission
under the public service commissions law."

I think that the exemptions of the employees thus expressly
specified are based on such obvious reasons and grounds of
classification and that the powers conferred on the industrial
board are so limited in extent and so governed by rules pre-
scribed in the statute itself that it was clearly within the powers
of the legislature to enact as it did and that we need not spend
any more time in the consideration of these provisions than to
state that we see nothing objectionable in them from the con-
stitutional standpoint of legislative power.

In the year 1914 this section was amended in two further and
important respects. Subdivision 2 was amended and supple-
mented by adding an exemption from its benefits of " Em-
ployees, if the commissioner of labor in his discretion approves,
engaged in the work of any industrial or manufacturing process
necessarily continuous, in which no employee is permitted to
work more than eight hours in any calendar day " (L. 1914, ch.
396) ; also an exemption of " Employees in dairies, creameries,
milk condensaries, milk powder factories, milk sugar factories,
milk shipping stations, butter and cheese factories, ice cream
manufacturing plants and milk bottling plants, where not more
than seven persons are employed." (L. 1914, ch. 388.)

While these amendments were not adopted until after the

occurrence of the violations involved in this action and are not, therefore, before us in it, they are a subject of consideration in the case of Matter of Peach, argued at the same term and to be decided at the same time as this case, and, therefore, for purposes of convenience and of continuity of discussion they will be considered in the present opinion.

The provision exempting employees of dairies, creameries, etc., numbering seven or less, seems to me to be based upon a perfectly reasonable classification and, therefore, within the legislative power. It is to be observed that all of these employments deal with perishable products consisting of milk or having milk as a basic element. It is apparent, therefore, that they could not be wholly suspended for twenty-four hours without either total destruction or serious impairment of their products, and that the only manner in which the statute could be complied with would be by laying off part of the employees from day to day. It is then quite probable that in a small establishment it would be more burdensome than in a large one, to lay off each employee one full day in seven. It is not difficult to perceive that it might impose a greater proportion of extra work on those who remained if no extra men were hired or a greater proportionate burden on the business if extra men were employed to take the places of those who were temporarily idle.

In addition I think that the legislature might consider the widely prevalent belief that in larger establishments there is necessarily lacking the same beneficial personal relationship between employer and employee which prevails in a smaller one, and that the demands and strain upon the employee in the former are apt to be greater, and that, therefore, there is greater need for oversight and regulation.

Taking into account these and perhaps other considerations we believe that the legislature was justified in making this classification. In determining whether it will enact such legislation as this the legislature must necessarily always consider the

two elements of necessity for the legislation and of the burdens which its enactment' will inflict upon those who are subject to it. There must be a reasonable relation between the two, and frequently legislation has been condemned because the ends to be gained did not afford any adequate or proper justification for the interference and burdens which were imposed upon individual rights.

So long as there is some real difference in the situation, interests and capacity of different classes of citizens, this may be made the basis of legislative classification which has a real and reasonable relationship to the difference which thus exists. The wide discretion possessed by the state is not transgressed unless the classification is palpably arbitrary. We think there may be a real difference between the situation and labor of employees in large and small establishments of the kind covered by this exception and that, therefore, it was proper for the legislature to differentiate them. This being so the question where the line should be drawn largely rested in its discretion and that discretion seems to have been exercised in a manner naturally suggested by the relation between the number of employees and the days of the week. (People ex rel. W. E. & C. Co. v. Metz, 193 N. Y. 148, 165; People v. Havnor, 149 N. Y. 195, 205; Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 559; Missouri v. Lewis, 101 U. S. 22, 31; Petit v. Minnesota, 177 U. S. 164, 168; St. Louis Consol. Coal Co. v. Illinois, 185 U. S. 203.)

We do not think that this classification is at all subject to the condemnation which was visited upon the statute pertaining to stock yards in Cotting v. Kansas City S. Y. Co. (183 U. S. 79). There the statute was manifestly aimed at one particular corporation and the attempt was made to base the classification upon mere extent of business, and between the classification and such feature there was no legitimate connection whatever.

The remaining provision of the statute which exempts
" Employees, if the commissioner of labor in his discretion ap-
proves, engaged in the work of any industrial or manufactur-
ing process necessarily continuous, in which no employee is
permitted to work more than eight hours in any calendar day,"
presents greater difficulties.   In fact, we are compelled to ex-
press the belief that it is unconstitutional because of the at-
tempt which the legislature has made to delegate its powers
to the commissioner of labor.   The proposition is so well
settled that we need not cite authorities in its support that the
legislature cannot secure relief from its duties and responsi-
bilities by a general delegation of legislative power to some one
else.   It seems to us that that is precisely and broadly what is
here attempted.   The provision as a whole means that certain
employees shall be exempt if the commissioner of labor " in his
discretion approves."   (L. 1914, ch. 396.)

The question whether the statute shall take effect in any, all,
or no cases is left wholly to his volition.   Under its terms he
has the power without check or guidance, so far as we can
perceive, to veto the entire clause and decide that its benefits
shall never be extended to any case although it comes within the
precise terms of the statute, or to permit the exemption in one
case and deny it in another precisely similar one.   Of course,
it is not to be assumed that the commissioner of labor would
intentionally be arbitrary and unreasonable in the exercise of
this power, but nevertheless the legislature has attempted to
confer upon him the opportunity which would permit of these
shortcomings and we are to judge of a statute by what is pos-
sible under it.   In the absence of any guide it might very well
happen that an administrative officer with the best of purposes
would nevertheless be very fallible in the execution of them.

If we assume, as I think we may, that the legislature might
have conferred upon an administrative board or official the duty
to determine whether in each case the conditions actually existed

upon which this exemption was based and to take effect, it is sufficient to say that nothing of that sort has been done. The enactment is absolutely unrelieved by any word of that kind.

This subject of the delegation of legislative powers under somewhat kindred conditions was last considered by this court in Matter of Trustees of Village of Saratoga Springs v. Saratoga Gas, Electric Light & Power Co. (191 N. Y. 123) wherein former Chief Judge CULLEN wrote. There was involved in that case the constitutionality of chapter 727, Laws of 1905, creating a commission to regulate the price to be charged for service by gas and electric light companies. After an elaborate review of authorities, it was held that fixing the maximum rates of carriers and public service corporations was a proper exercise of the police power of the state vested in the legislature, but that this power was not so inherently or exclusively legislative that the legislature might not, in the exercise of its plenary powers and in the absence of any express limitation by the Federal or State Constitution, delegate to and confer upon other branches of the state government the duty not only of executing a law enacted for the purpose of regulating rates but of determining its application to particular cases and the formulating of rules for its exercise. Full recognition, however, was given to the principle that conceding that the legislature might commit to an administrative board the power to fix a tariff of rates the statute must prescribe some standard by which action of the board should be governed, and it was held that this essential qualification was observed in the statute in question by providing that the rates to be fixed by the board must be " within the limits prescribed by law," which required that they must be " reasonable " and not arbitrary and that this was a sufficient standard.

This particular provision is not immediately involved in the cases before us and it is not so connected with the general scope and purpose of the legislation that its imperfections totally

destroy the latter. As has been stated, it was adopted as an amendment, wherefrom the conclusion quite irresistibly flows that the original statute may stand even though this provision falls as invalid. We are bound to believe, however, that the legislature thought it wise as a matter of fairness and public policy that the requirements of the main statute, which might at times be somewhat burdensome, should be modified by some such limitation as this, and, therefore, we have thought it our duty to call to the attention of that body while it is in session the doubts which have arisen in our minds, in order that the subject may receive such consideration as seems appropriate.

The order appealed from should be affirmed.

WILLARD BARTLETT, Ch. J., CHASE, COLLIN, HOGAN, MILLER and CARDOZO, JJ., concur.

Order affirmed.