GUSTAVE C. DARWEGER, Respondent, *v.* CHARLES B. STAATS and Others, Appellants.*

Third Department, March 5, 1935.

* Affg. 153 Misc. 522; affd., 267 N. Y. 290.

*Hinman, Straub & Hughes* [*Harold J. Hinman* of counsel], for the appellants.

*Pearis & Resseguie* [*Samuel H. Pearis* of counsel], for the respondent.

*John J. Bennett, Jr., Attorney-General* [*Henry Epstein, Solicitor General*, of counsel], in support of the constitutionality of chapter 781 of the Laws of 1933 (State Recovery Act).

HILL, P. J.   We are reviewing two orders of the Broome County Special Term, (1) denying appellants' motion to dismiss plaintiff's complaint for failure to state a cause of action, (2) granting an injunction *pendente lite* restraining defendants from interfering with plaintiff in the operation of his intrastate coal business.

Appellants constitute the Divisional Code Authority, Division No. 3, of the Retail Solid Fuel Industry.   The jurisdiction of Division No. 3 extends to the entire State of New York except the counties comprising New York city and those on Long Island. Code of Fair Competition No. 280 for the Retail Solid Fuel Industry was approved by the President of the United States by an executive order dated February 14, 1934, which recited that the approval was pursuant to the authority vested in the President by title 1 of the National Industrial Recovery Act, approved June 16, 1933. A properly certified copy of the code was filed with the Secretary of State of the State of New York on February 24, 1934.

The suit is brought for a permanent injunction to restrain defendants from enforcing the numerous rules and regulations contained in the code in connection with the conduct by plaintiff of his intrastate retail coal business, particularly rule No. 5 thereof, which forbids a sale of solid fuel at retail under any terms and conditions so that a buyer shall pay a price less than that fixed by the code authorities.   It is pleaded that threats to prosecute plaintiff civilly and criminally have been made by defendants.   The defendants, by making the motion to dismiss the complaint, admit for the purposes of the motion, the truth of all the allegations of the complaint and all reasonable intendments arising from the facts pleaded, but argue that plaintiff has no cause of action because thereof, as the President's executive order of February 14, 1934, justifies and empowers them to force plaintiff to conduct his coal business according to the code of " fair competition."   The constitutionality of the National Industrial Recovery Act of June 16, 1933 (U. S. Code, tit. 15, chap. 15), was discussed by the Supreme Court of the United States in *Panama Refining Co.* v. *Ryan* (293 U. S. 388; 55 S. Ct. 241).   That suit for injunction involved the

interstate transportation of petroleum and the products thereof. Section 9 of title 1 of the act specifically empowered the President " to prohibit the transportation in interstate and foreign commerce of petroleum and the products thereof produced or withdrawn from storage in excess of the amount permitted to be produced or withdrawn from storage by any state law." Chief Justice HUGHES, writing for himself and seven of his associates, says in part concerning the specific provision quoted, and section 1 of title 1 of the act: " The Congress did not declare in what circumstances that transportation should be forbidden, or require the President to make any determination as to any facts or circumstances. Among the numerous and diverse objectives broadly stated, the President was not required to choose. The President was not required to ascertain and proclaim the conditions prevailing in the industry which made the prohibition necessary. The Congress left the matter to the President without standard or rule, to be dealt with as he pleased. The effort by ingenious and diligent construction to supply a criterion still permits such a breadth of authorized action as essentially to commit to the President the functions of a Legislature rather than those of an executive or administrative officer executing a declared legislative policy " (p. 418). This decision answers defendants' argument that the National Industrial Recovery Act justifies the interference with plaintiff's business as charged in the complaint. With so recent, direct and authoritative precedent, other and wider citations of authorities would be cumulative.

Defendants also argue that the Schackno Act (Laws of 1933, chaps. 781 and 783, of the State of New York) justifies their attempted control of plaintiff's coal business. Section 1 of chapter 781 reads: " Section 1. Legislative finding; statement of policy. A national emergency productive of widespread unemployment and disorganization of industry, which likewise prevails in the state of New York, which burdens intrastate, interstate and foreign commerce, affects the public welfare, and undermines the standards of living of the American people and of the people of the state of New York, is hereby declared to exist. The existence in this state of such present acute economic emergency, and the effects and certain causes thereof as declared in section one of title one of the national industrial recovery act, enacted by the congress of the United States, effective June sixteenth, nineteen hundred thirty-three, are hereby recognized; and it is hereby declared that said emergency, the causes and effects thereof, as so declared, relate as well to commerce in this state wholly intrastate in character as to interstate and foreign commerce and transactions affecting interstate and foreign commerce carried on in this state. It is hereby

declared to be the policy of this state to cooperate in the furtherance of the objects and purposes declared in said act of the congress, and each and every provision of this act shall be construed in accordance with the policy so declared, and to make uniform the standards of fair competition prevailing in intrastate commerce and industry with those of interstate commerce required by the provisions of the said national industrial recovery act which are applicable in interstate commerce in the state of New York." This section contains the only attempt in the entire act to lay down a legislative policy and to establish standards to be followed by the executive agencies to which power is sought to be delegated. The words of Chief Justice Hughes in the *Panama Refining Company* case concerning section 1 of title 1 of the National act apply with equal force to section 1 of the State act. He says, in part: " The first section is a ' declaration of policy.' It declares that a national emergency exists * * *. It is manifest that this broad outline is simply an introduction of the Act, leaving the legislative policy as to particular subjects to be declared and defined, if at all, by the subsequent sections " (pp. 416, 418). In the State act there are no subsequent sections which declare and define the legislative policy. The later provisions deal with the mechanics of filing in the Secretary of State's office of the State of New York of a copy " of each code, agreement, license, rule or regulation in effect pursuant to such act of the congress," and provide that upon the filing of a certified copy of a code of " fair competition," approved by the President of the United States, " any violation of any provision of such code, agreement, license, rule or regulation shall be a misdemeanor, and upon conviction thereof, the person convicted shall be fined not more than five hundred dollars for each offense, and for each day such violation continues a separate offense subject to the fine herein prescribed shall be deemed to have been committed." In substance and effect, like the Constitution of the United States, the Constitution of the State of New York provides: " The legislative power of this State shall be vested in the Senate and Assembly " (Art. 3, § 1). The Legislature may not delegate the fixing of policies or the establishing of standards, but having fixed and defined a standard, it may empower an executive department to enact subordinate rules for the purpose of making the defined standards and policies effective. (*Panama Refining Co.* v. *Ryan, supra*.) The Schackno Act is not only an unconstitutional attempt to delegate legislative authority, but it amounts to complete abdication by the Legislature. (*Panama Refining Co.* v. *Ryan, supra; Wayman* v. *Southard*, 10 Wheat. 1; *United States* v. *Grimaud*, 220 U. S. 506; *People* v. *Klinck Packing Co.*, 214 N. Y. 121; *Matter of*

*Trustees of Village of Saratoga Springs* v. *Saratoga Gas, Electric Light & Power Co.*, 191 id. 123.) An administrative board may neither act without legislative authority nor beyond the limits defined by the Legislature. (*Brown* v. *University of State of New York*, 242 App. Div. 85; 266 N. Y. 598.) The complaint states a cause of action for injunctive relief. It appears on the motion for an injunction *pendente lite* that defendants, or some of them, threatened to cause plaintiff's arrest for any violation of Code No. 280, and that plaintiff and other coal dealers had been advised by defendants, or on their behalf, that " any sale of coal by you for less than the established floor level price would constitute a violation of the approved Coal Code No. 280, which is binding on all dealers. Compliance with the approved Code for your industry is compulsory, or prosecution results." Also that an information was presented to the City Court of Binghamton by an inspector employed by defendants asking that a warrant be issued for the arrest of a coal dealer in that city for a violation of subdivision 4 of article 6 of Code No. 280 which prohibits, under certain conditions, " the delivery of more than one kind, grade, size or blend of solid fuel if loaded on the same wagon or truck." The plaintiff has shown reasons justifying the granting of the injunction *pendente lite* against the defendants.

The order denying defendants' motion to dismiss the complaint should be affirmed, with ten dollars costs. The order granting an injunction *pendente lite* against the defendants should be affirmed, with ten dollars costs.

RHODES, BLISS and HEFFERNAN, JJ., concur; RHODES, J., also votes to affirm upon the grounds stated in his separate memorandum, in which HILL, P. J., BLISS and HEFFERNAN, JJ., concur; McNAMEE, concurs for affirmance, with a separate memorandum.

RHODES, J. I concur with Presiding Justice HILL.

The Ninth Amendment to the Constitution of the United States provides as follows: " Reserved rights of people. The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."

The Tenth Amendment to said Constitution is as follows: "Powers not delegated, reserved to States and people respectively. The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

The several States were separate and independent sovereignties at the time of the adoption of the Federal Constitution, and thus

they remain, except in so far as certain powers have been delegated to the United States by that Constitution. No State may lawfully be deprived of such reserved powers except in the manner specified in such Constitution. In no other way may the sovereignty of any State be impaired, except by surrender from within or usurpation from without.

The so-called Schackno Act does not create or establish any State agency or instrumentality for the carrying out of its declared purposes. By its terms a copy of each code in effect pursuant to the Federal act (NIRA) is permitted to be filed in the office of the Department of State of the State of New York, and provides that upon the filing of a copy of such code properly certified, as approved by the President of the United States, such code shall be " the standard of fair competition " in this State as to transactions intrastate in character. The adoption, administration and enforcement of any code are sought to be effected not by agencies of the State subject to State control, but by the President acting under the Federal law.

Thus, the Legislature has, to this extent, attempted to abdicate its powers and surrender the sovereignty of the State into the hands of the President. I do not believe that such power is reposed in the Legislature; it rests, if at all, in the People, to be accomplished by a change in the State Constitution.

It is true that the authority attempted to be granted is not irrevocable; the Legislature may at any time retake what it has attempted to bestow, but that involves a contingency which is not our problem. Our duty is to pass upon the validity of the statute as it now exists. I am unable to find any tenable theory upon which it may be upheld.

HILL, P. J., BLISS and HEFFERNAN, JJ., concur.

McNAMEE, J. We have here only a question of pleading, and a question of the propriety of granting injunctive relief pending the suit. Our decision calls only for a disposition of these two questions.

On the question of pleading, it appears from the complaint that an organized group who are unfamiliar to the law of New York are defending. This group have adopted a rule known as Order No. 3 E, part of its code of fair practice; and thereunder they claim the right to control the conduct and the intrastate business of the plaintiff, and also the right to prosecute him criminally for disobeying their order, and they threaten to do so. Already they have done so to others, under a code known as No. 280. The contemplated prosecution is imminent, and the prospective damage

is evident. The facts are admitted. This makes a good cause of action. The plaintiff is not required to wait until he is lodged in jail before protecting himself against illegal arrest, or the imposition of an illegal fine.

On the question of temporary injunctive relief, it appears in the moving papers, and is not denied, that the rule in question was never filed with the Secretary of State. Chapter 781 of the Laws of 1933 (the Schackno Act, so called) affords the only color of authority for defendants' claims to obedience and the only alleged basis for their threats of prosecution, pursuant to any rule enacted by them. Section 2 of that statute authorizes and requires the filing of certain codes and rules, and provides: " *Upon such filing* of a copy so certified of a code of fair competition for any trade, industry or subdivision thereof, * * * or of any rule or regulation * * * such code * * * rule or regulation shall be the standard of fair competition for such trade or industry * * * and any violation of any provision of such code * * * shall be a misdemeanor," and shall be punished by fine. The filing with the Secretary of State was a *sine qua non* to any validity of a code or rule enacted by defendants, even if the statute mentioned could impart validity to it as a part of the law of the State. This condition the defendants have not met, and admit the failure. Accordingly, they cannot defend even under the color of right to exercise any power over the plaintiff or his business. The injunctive relief *pendente lite* was properly granted.

Hence a complete disposition of the appeal before this court can be made without inquiry into the validity of the statute under which the defendants seek a dismissal of the complaint and a denial of the injunction. Until now they have disregarded it.

The orders should be affirmed.

Order denying defendants' motion to dismiss complaint affirmed, with ten dollars costs and disbursements. Order granting injunction *pendente lite* against defendants affirmed, with ten dollars costs and disbursements.