

# THE ATTORNEY GENERAL.
## OF TEXAS

### AUSTIN 11, TEXAS



GERALD C. MANN
ATTORNEY GENERAL.

Honorable George G. Roane
County Attorney
Fort Bend County
Richmond, Texas

Opinion No. O-4609
Re: Constitutionality of Joint Leg-
islative Advisory Committee set
up by House Bill No. 284, Acts
Regular Session, 47th Legislature.

Dear Sir:

We have your letter of May 13th, requesting the opinion of this department upon the constitutionality of the provisions of House Bill No. 284, Acts Regular Session, 47th Legislature, the Rural Aid Appropriation Bill, creating and prescribing the powers and duties of a "Joint Legislative Advisory Committee."

So much of the caption of House Bill No. 284 as relates to the Legislative Advisory Committee reads as follows:

"AN ACT . . . creating a Joint Legislative Advisory Committee; defining its powers and duties and giving it supervisory powers for the administration of said appropriation and allocation; . . . giving the Joint Legislative Advisory Committee certain appellate powers and authorizing said committee to employ certain persons to aid it in carrying out its duties; making certain allocations for the payment thereof; requiring said committee to make certain investigations for recommendations to the legislature; . . . providing for the duties of the State Board of Education in the event said Joint Legislative Advisory Committee becomes inoperative for any purpose. . . ."

The provisions of the Act itself relating to the Joint Legislative Advisory Committee are as follows:

Article I, Section 1, provides in part as follows:

"Districts maintaining a school at home and having less than an average of one enumerated scholastic per square mile are exempt from said minimum scholastic requirement and are eligible for aid for only one teacher unless a geographical barrier necessitates the operation of two schools for the same race in said district, such geographical barrier to be determined by the State Department of Education subject to the approval of the Joint Legislative Advisory Committee."

Article I, Section 4, provides in part as follows:

"The sixty-five per cent average daily attendance shall be determined by a rule provided therefor by the Department of Education with the approval of the Joint Legislative Advisory Committee."

Article II provides in part as follows:

"The trustees of the districts authorized to apply for aid under the provisions of this Act shall send to the State Superintendent of Public Instruction on forms provided by said authority, and which have been approved by the Joint Legislative Advisory Committee, a list of the teachers employed in the schools, showing the monthly salaries, experience, and training of each, together with an itemized statement of all anticipated receipts and budgeted expenditures, the length of terms, and such other information, as may be required."

Article III, Section 1, provides in part as follows:

"Where unusual or extraordinary conditions cause an actual increase in enrollment so that the average daily attendance of the school reaches a point in excess of the net scholastics remaining in the district after transfer, an adjustment for the remainder of the school year as to the number of teachers may be made by the State Superintendent subject to the approval of the Joint Legislative Advisory Committee, in which case said average daily attendance becomes the basis for the teacher-pupil quota."

Article IV, Section 1, provides in part as follows:

"Provided further that school districts whose area does not exceed sixteen square miles and having an accredited high school of sixteen units or more which serve Teacher Training Institutions as practice teaching laboratories shall upon approval of the Joint Legislative Advisory Committee receive a tuition payment of not to exceed seven dollars and fifty cents ($7.50) per month for not to exceed five months on all high school pupils enumerated in said district."

Article V, Section 1, provides in part as follows:

"And providing further that all school districts containing one hundred (100) square miles of territory or more may receive Two Dollars ($2) per month per pupil as transportation aid when there is need shown therefor as provided

herein and when same is recommended by the Director of Equalization and approved by the Joint Legislative Advisory Committee."

Article V, Section 2, provides in part as follows:

"No transportation aid shall be granted for a pupil being transported out of his home school district if two or more receiving schools are applying for transportation aid from such pupil's home district unless the bus routes through such districts have been approved by the State Department of Education, and such approval confirmed by the Joint Legislative Advisory Committee."

Article V, Section 3, provides in part as follows:

"A school requesting transportation aid on a student who is not an approved scholastic of his home district, shall list such student separately on the application, giving such information as may be requested by the Department of Education and the Joint Legislative Advisory Committee. The Department of Education, subject to approval of the Joint Legislative Advisory Committee, shall formulate rules to determine the eligibility of students who are not approved scholastics of their home district."

Article VI provides in part as follows:

"It shall be the duty of the State Superintendent of Public Instruction, and he is hereby authorized, to take such action and to make such rules and regulations not inconsistent with the terms of this Act as may be necessary to carry out the provisions and intentions of this Act, subject to the approval of the Joint Legislative Advisory Committee created in this Act, and for the best interest of the school for whose benefit the funds are appropriated. . . . In the event the appropriations and allocations of aid made herein are insufficient to pay the total of all applications showing need, the State Superintendent and the Director of Equalization subject to the approval of the Joint Legislative Advisory Committee shall reduce all applications pro rata so as to bring aggregate of all applications approved within the appropriations and all allocations herein made, and in order to accomplish this, said Director shall reduce the authorized expenditures of all schools applying for salary aid pro rata; shall lower the tuition rate of all schools applying for tuition pro rata;

and decrease the transportation aid of each scholastic transported pro rata, so as to bring the total salary aid, tuition aid and transportation aid within the allocations herein set forth. Appeals from the decision of the State Superintendent shall be made to the Joint Legislative Advisory Committee for adjustments and the decisions of said Committee shall be final."

Article VIII, Section 1, provides in part as follows:

"For the school year 1941-42, upon the agreement of the board of trustees of the districts concerned or on petition signed by a majority of the qualified voters of the district and subject to the approval of the county superintendent, state superintendent, and Joint Legislative Advisory Committee, the trustees of a district which may be unable to maintain a satisfactory school may transfer entire scholastic enrollment, or any number of grades thereof, to a convenient school of higher rank, and in such event, all of the funds of the district, including the State aid to which the district would otherwise be entitled under the provisions of this Act, or such proportionate part thereof as may be necessary shall be used in carrying out said agreement; provided that no aid shall be allowed for teachers that are not actually employed in the contracting schools."

Article IX, Section 1, provides in part as follows:

"Warrants for all money granted under the provisions of this Act shall be approved and transmitted by the State Superintendent of Public Instruction to treasurers of depositories of school districts to which aid is granted in the same manner as warrants for state apportionments, are not transmitted. Initial payment of not more than 50% of salary aid, tuition aid, and transportation aid may be made by the State Superintendent of Public Instruction after September 1st of each year of the biennium as soon as a basis for payment can be determined, and approved by the Joint Legislative Advisory Committee.... Final payment by warrant of the total amount allotted to any one school shall then be made not later than June 1st, or as early as possible thereafter, after the approval and upon the order of the Joint Legislative Advisory Committee, except high school tuition."

Article XII provides as follows:

"There is hereby provided a special Joint Legislative Advisory Committee composed of five (5) members of the

Senate to be appointed by the President of the Senate and five (5) members of the House of Representatives to be appointed by the Speaker of the House of Representatives. Said Committee shall promptly organize and select from its membership a chairman and a secretary and keep a permanent record of its proceedings and shall vote as a unit on all propositions coming before it for consideration. Said Committee shall concur with the State Superintendent of Public Instruction in regulations and interpretations governing the administration of this Act. Said Committee shall also receive and adjust appeals from the decision of the State Superintendent. Said Committee is also directed to study the school laws of this State in order that said laws may be recodified. Said members are to be reimbursed for their actual and necessary expenses from the Contingent Fund of the House of Respective members for the actual and necessary expenses in performance of their duties as members of said Committee on approval of the Chairman of said Joint Advisory Committee and the Chairman of the respective Contingent Expense Committee of each House, not to exceed Five Thousand, Five Hundred Dollars ($5,500) for the first year of the biennium and Two Thousand, Five Hundred Dollars ($2,500) for the second year of the biennium, provided that any unexpended balance occurring at the end of the fiscal year 1941-42 in any allocation may be transferred and added to the appropriation for the year ending August 31, 1943. Should for any reason the Joint Legislative Advisory Committee fail or refuse to perform the duties herein imposed upon it, or should the duties, powers, and functions of said Joint Legislative Advisory Committee become inactive or unenforceable, then, and in that event, such duties as are herein imposed on said Joint Legislative Advisory Committee shall be performed by the State Board of Education the same as if said Committee had not been created or authorized."

Article XIII, Section 1, provides:

"For the purpose of promoting the equalization of educational opportunities afforded by the State of Texas to all enumerated scholastics within the State as herein provided, and for the purpose hereinabove set out, there is hereby appropriated out of the General Revenue Fund of the State of Texas not otherwise appropriated, the sum of Eight Million, Four Hundred Forty-four Thousand, One Hundred and Ninety Dollars ($8,444,190) for the school year ending August 31, 1942, and Eight Million, Four Hundred Forty-four Thousand, One Hundred and Ninety Dollars ($8,444,190) for the school year ending August 31, 1943, or so much thereof as may be necessary for the biennium ending August 31, 1943, to be

allocated and expended under the provisions of this Act by the State Superintendent of Public Instruction through the Director of Equalization in the State Department of Education and under the supervision of the Joint Legislative Advisory Committee created herein."

Article XIII, Section 2, provides:

"It is herein specifically provided that out of the money appropriated for each school year of the biennium the sum of Four Million, Three Hundred and Fifty Thousand Dollars ($4,350,000) is hereby set aside for salary aid; Nine Hundred and Twenty Thousand Dollars ($920,000) for High School tuition; Three Million, Thirty-nine Thousand and Twenty Dollars ($3,039,020) for transportation aid; One Hundred Thirteen Thousand, Nine Hundred and Seventy Dollars ($113,970) for the administration of this Act as provided herein; Eight Thousand, Two Hundred Dollars ($8,200) for the operation of the school plant division in the Department of Education, as permitted, authorized, and appropriated in the general Departmental Bill, for the biennium ending August 31, 1943, Five Thousand Dollars ($5,000) for the Census Division in the Department of Education to be expended by the Director thereof on order of the Joint Legislative Advisory Committee for checking and approving school census rolls in seasonal labor not to exceed forty cents (40¢) per hour therefor, Eight Thousand Dollars ($8,000) for the purpose of employing an auditor and for such other and necessary expenses incident to the duties of the Joint Legislative Advisory Committee. Such auditor shall not receive more than Three Thousand, Six Hundred Dollars ($3,600) per year out of the sum hereby allocated. The auditor and other authorized employees shall be appointed by the Committee and their salary and necessary expenses be paid on order of said Committee and all such employees shall be under the direct supervision of said Committee or its order. Each of the above named allocations is for each year of the biennium.

"Any unexpended balance under either of the above allocations at the end of the first year of the biennium shall be transferred by order of the Joint Legislative Advisory Committee to any allocation herein created and set up."

So much of the Act as creates the "Joint Legislative Advisory Committee" for the purpose of studying the school laws of this State in order that said laws may be recodified is clearly constitutional.

Terrell v. King, 118 Tex. 237, 14 S. W. (2d) 786. The remaining provisions of the Act, however, with respect to the Joint Legislative Advisory Committee, the effect of which are to impose upon said Committee of the Legislature the authority to administer the law, are unconstitutional for the reasons to be hereinafter stated.

Article II, Section 1, of the Constitution of the State of Texas, provides as follows:

"The powers of the Government of the State of Texas shall be divided into the three distinct departments, each of which shall be confided to a separate body of magistracy, to-wit: those which are legislative to one; those which are executive to another; and those which are judicial to another; and no person, or collection of persons, being of one of these departments shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted."

Article 3, Section 1, of the Constitution of the State of Texas, provides:

"The legislative power of the State shall be vested in a Senate and House of Representatives, which together shall be styled 'the Legislature of the State of Texas.'"

Of Article 2, Section 1, of the Constitution of Texas, the late Chief Justice Cureton, in the case of Langever v. Miller, 76 S. W. (2d) 1035, stated:

"The origin of this provision is very well known. It first found expression, at least with clarity and precision, in the writings of Montesquieu with which the members of the Federal Constitutional Convention of 1787 were familiar, early appeared in the organic laws of the some of the states, and was adopted as a basic principle in the Constitution of the United States in 1787, from which it entered into the Constitutions of nearly all the States, including Texas, both as a republic and as a state. Montesquieu's Spirit of Laws, (Collier's Edition) pages 151-152; 12 Corpus Juris, pages 802, 803, section 234; Sayles Constitutions of Texas, post.

"Under this division of governmental power it is now an established and fundamental principle of constitutional law that the executive cannot exercise either judicial or legislative authority; the judicial department cannot be clothed with executive or legislative power; and the legislative 'magistracy' cannot exercise the functions of either the

Executive or the Judicial Departments. 12 Corpus Juris, page 802, section 234, et seq. Corpus Juris, supra, declares: 'The separation of the powers was believed by Montesquieu, by Blackstone, and by American Constitution makers of the eighteenth century to be one of the chief and most admirable characteristics of the English Constitution.'

"A principle which is the very foundation of the government of the United States and of the several states must be deemed one essential to the preservation of the rights and liberties of the people, and should be thoughtfully and faithfully observed by all clothed with the powers of government.

"So important is this division of governmental power that it was provided for in the first section of the first article of the Constitution of the Republic of Texas, and alone it constituted article 2 of each succeeding Constitution. Sayles' Texas Statutes (Constitutions) Ed. of 1888, pp. 188, 228, 302, 399, 508."

It is the function of the legislative branch of the government to make the laws; it is the function of the executive branch of the government to administer and execute those laws. In the statute under consideration, the Legislature of the State of Texas has undertaken not only to declare what the law shall be, which is clearly its prerogative, but has also undertaken to clothe a portion of the membership of the Legislature, the Joint Legislative Advisory Committee, with the authority to execute and administer the law passed by the Legislature. Under Article 2, Section 1, of the Constitution of the State of Texas, the Legislature is powerless to clothe itself, or a portion of its members, with executive authority.

The following language, quoted from the case of People v. Tremaine, (New York) 168 N. E. 822, has application to the situation under consideration:

"The Legislature has not made only a law -- i.e., an appropriation -- but has made two of its members ex officio its executive agents to carry out the law; i.e., to act on the segregation of the appropriation. This is a clear and conspicuous instance of an attempt by the Legislature to confer administrative power upon two of its own members. It may not engraft executive duties upon a legislative office and thus usurp the executive power by indirection. Springer v. Phillipine Islands, 277 U. S. 189, 48 Sup. Ct. 480, 72 L. Ed. 845.

"Should the question arise whether the appointments under consideration are legislative or administrative, a dilema presents itself either side of which is fatal to the contention of the respondent. If they are legislative in character, the appointment amounts to a delegation of the legislative power over appropriations. The Legislature cannot secure relief from its duties or responsibilities by a general delegation of legislative power to someone else. People v. C. Krinck Packing Company, 214 N. Y. 121, 108 N. E. 278, Anno. Cas. 1916B, 1051. The power to itemize legislative appropriations is the legislative power which it may exercise if it sees fit as long as the matter is in its hands. If the power to approve the segregation of lump sum appropriations may be delegated to anyone, even to one or two members of the Legislature, it necessarily follows that the power to segregate such appropriations may also be conferred upon such delegates. The conclusion would then inevitably be that the Legislature could make lump sum appropriations and delegate the power to two of its members to segregate the same, not only within a department but among departments. To visualize an extreme case, one lump sum appropriation might be made to be segregated by the committee chairmen. Such a delegation of legislative power would be abhorent to all our notions of legislation on the matter of appropriations. It would amount to a casting on others of a great measure of legislative responsibility assumed by the members themselves by their oath faithfully to discharge the duties of their office. If, on the other hand, the power is administrative, it has no real relation to legislative power. The head of the department does not legislate when he segregates a lump sum appropriation. The legislation is complete when the appropriation is made. The Legislature might make the segregation itself, but it may not confer administrative powers upon its members without giving them, unconstitutionally, civil appointments to administrative offices. It might by general law confer the power of segregation or approval of segregation upon any one but its own members subject to the provisions of the Constitution (Article 5), hereinafter discussed, if applicable, but the Constitution (Article 3, Section 7, supra) makes its own members ineligible to such an appointment.

"It follows that so much of the appropriation bills in question as confers powers on the legislative chairman to approve segregations is unconstitutional and void."

See also the case of Stockman v. Leddy, 129 Pac. 220.

Though so much of the Act as purports to confer upon the Joint Legislative Advisory Committee power to execute and administer the provisions of the Act is unconstitutional, nevertheless those duties, powers, and functions of the Joint Legislative Advisory Committee do not wholly fail. This is so because the Legislature anticipated that the attempt to confer such authority upon the Joint Legislative Advisory Committee would probably violate the Constitution of the State of Texas, and, in recognition of that, provided in Article XII of the Act that should the duties, powers and functions of the Joint Legislative Advisory Committee become inactive or unenforceable, then and in that event, "such duties as are herein imposed on said Joint Legislative Advisory Committee shall be performed by the State Board of Education the same as if said Committee had not been created or authorized."

It follows, therefore, from what has been said above, that the duties, powers, and functions of the Joint Legislative Advisory Committee, save and except the duty imposed upon it to study the school laws of this State in order that said laws may be recodified, devolve upon and are to be executed by the State Board of Education the same as if the Joint Legislative Advisory Committee had not been created or authorized by the Act.

We trust that the foregoing sufficiently answers your inquiry.

Yours very truly

APPROVED JUN 12, 1942

/s/ Gerald C. Mann

ATTORNEY GENERAL OF TEXAS

ATTORNEY GENERAL OF TEXAS

By /s/ R. W. Fairchild
     R. W. Fairchild
        Assistant

RWF:db:lm

APPROVED
OPINION
COMMITTEE
BY /s/ BWB
CHAIRMAN