THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. CHARLES SCHWEINLER PRESS, Appellant.

Constitutional law — Labor Law — amendment (L. 1913, ch. 83) entitled "Period of rest at night for women," and providing that no woman shall work in any factory in the state before six o'clock in the morning or after ten o'clock in the evening, violates no provision of the Federal or the State Constitution — power of legislature to enact such statute — untenable objections thereto.

1. The statute amending the Labor Law (L. 1913, ch. 83) entitled "Period of rest at night for women," and providing that "In order to protect the health and morals of females employed in factories by providing an adequate period of rest at night no woman shall be employed or permitted to work in any factory in this state before six o'clock in the morning or after ten o'clock in the evening of any day," violates no provision of either the Federal or the State Constitution, and is constitutional as a police regulation in the interest of public health and the general welfare of the people of the state. (*People* v. *Williams;* 189 N. Y. 131, distinguished.)

2. In determining whether the legislation was justified, under the police power of the state, the legislature might, and the court may, take into account the report of a commission created by the legislature to investigate and consider the subject of industrial night work by women, and such facts tending to support such report as were matters of common knowledge, and the widespread and long-continued

belief evidenced by statutes and in other manner that night work by women in such a place as a factory is so injurious that grave dangers therefrom are to be apprehended. It was a sufficient basis for action if only there were reasonable grounds for belief that such labor was thus injurious, even though there was an earnest conflict of serious opinion on the subject.

3. It is not a basis for a constitutional objection to the statute that in exceptional cases it may prevent employment of some women for a short time between those hours under such conditions as would be productive of no substantial harm. The legislature must legislate in general terms, and a statute enacted within the scope of its authority for a general purpose is not unconstitutional because it covers and prohibits some isolated transaction which by itself would be harmless and unobjectionable.

4. It is not an effective objection to such a statute that some of those who will be protected by its provisions oppose such protection. The state may, if necessary, protect its citizens against even their own indifference, error or recklessness. Nor is it an objection to the statute that some cases which might have been included are omitted, for police legislation may rest on narrow distinctions.

*People* v. *Charles Schweinler Press*, 163 App. Div. 620, affirmed.

(Argued March 3, 1915; decided March 26, 1915.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered July 10, 1914, which reversed an order of the Court of Special Sessions of the city of New York, granting a motion in arrest of its judgment convicting the defendant of a violation of section 93-b of the Labor Law, denied said motion and remanded the case to the Court of Special Sessions, there to be proceeded with according to law.

The statute for violation of which the appellant was convicted reads as follows:

"§ 93-b. Period of rest at night for women. In order to protect the health and morals of females employed in factories by providing an adequate period of rest at night, no woman shall be employed or permitted to work in any factory in this state before six o'clock in the morning or after ten o'clock in the evening of any day."

The facts, so far as material, are stated in the opinion.

*Alfred E. Ommen* for appellant.   Chapter 83 of the Laws of 1913 is unconstitutional.   (*People* v. *Williams,* 189 N. Y. 131.)   The statute abridges the privileges of the citizens of the United States.   (*Butchers Co.* v. *Crescent Co.,* 111 U. S. 746; *Lawton* v. *Steele,* 152 U. S. 133; *People* v. *Arensberg,* 103 N. Y. 399; *United States* v. *Sweeney,* 95 Fed. Rep. 434.)   The statute denies to women the equal protection of the laws.   (*Low* v. *Rees Printing Co.,* 24 L. R. A. 701.)   The employment is not injurious to the public health or to the individual health of the women employed.   (*Lochner* v. *State of New York,* 198 U. S. 45.)   Under modern conditions the status of adult women and their rights and privileges in industrial occupations are identical with those of men.   (*Ives* v. *South Buffalo Ry. Co.,* 201 N. Y. 306; Tiedeman on Police Power, § 86.)

*Walter Jeffreys Carlin* for Association of Ice Cream Manufacturers of New York State, intervening.   Section 93-b of the Labor Law is in violation of section 6, article 1 of the Constitution of the state of New York.   (*People* v. *Williams,* 189 N. Y. 131; *People* v. *Gillson,* 109 N. Y. 397; *People* v. *Ringe,* 197 N. Y. 149; *People* v. *Havnor,* 149 N. Y. 200; *Foster* v. *Scott,* 136 N. Y. 584.)   The statute in question violates the Fourteenth Amendment to the Federal Constitution.   (*Connelly* v. *Union Sewer Pipe Co.,* 184 U. S. 540; *Butcher Co.* v. *Crescent Co.,* 111 U. S. 746; *Lawton* v. *Steele,* 152 U. S. 133.)

*Charles A. Perkins, District Attorney* (*William A. De Ford* of counsel), for respondent.   The section challenged is constitutional as being a proper exercise of the police power.   (*Barbier* v. *Connelly,* 113 U. S. 227; *Muller* v. *Oregon,* 208 U. S. 412; *People* v. *Ewer,* 141 N. Y. 129; *People* v. *King,* 110 N. Y. 418; *People ex rel. Nechamcus* v. *Warden, etc.,* 144 N. Y. 529; *People* v. *Havnor,* 149 N. Y. 195; *People ex rel. Kemmler* v. *Durston,* 119 N. Y. 337; *State* v. *Somerville,* 122 Pac.

Rep. 324; *Withey* v. *Bloehm*, 35 L. R. A. 632; *Ritchie* v. *Wayman*, 27 L. R. A. [N. S.] 994.) The real purpose of the statute under consideration has a reasonable connection with the health and morals of women; and having such connection, it is a constitutional exercise and is, therefore, a legitimate exercise of the police power of the state. (*C., B. & Q. R. R. Co.* v. *McGuire*, 219 U. S. 549; *St. John* v. *New York*, 201 U. S. 633; *Surety Co.* v. *Lynch*, 226 U. S. 192.) The statute does not violate section 6 of article 1 of the New York Constitution. (*People* v. *King*, 110 N. Y. 418; *People* v. *Lochner*, 177 N. Y. 145; *People ex rel. Nechamcus* v. *Warden, etc.*, 144 N. Y. 529; *People* v. *Ewer*, 141 N. Y. 129; *People* v. *Havnor*, 149 N. Y. 195; *Bohmer* v. *Haffen*, 161 N. Y. 390.) The statute challenged here does not violate the Fourteenth Amendment of the United States Constitution. (*Muller* v. *Oregon*, 208 U. S. 412; *Jacobson* v. *Mass.*, 197 U. S. 11; *Lochner* v. *New York*, 198 U. S. 45; *Viemeister* v. *White*, 191 U. S. 223.)

*Egburt E. Woodbury, Attorney-General (Merton E. Lewis* and *Claude T. Dawes* of counsel), in support of Labor Law. Worldwide common knowledge of present years, and the results of scientific investigation available since the decision in the *Williams* case, maintain and prove that night work in factories tends seriously to the injury of the health and morals of women. (*Lochner* v. *New York*, 198 U. S. 45; *Muller* v. *Oregon*, 208 U. S. 412.) Section 93-b of the Labor Law does not take property without due process of law, nor abridge the privilege or immunities of citizens of the United States, nor deny them the equal protection of the laws. (*People* v. *Klinck Packing Co.*, 214 N. Y. 121; *Red River Valley Bank* v. *Craig*, 181 U. S. 548; *Hatch* v. *Reardon*, 204 U. S. 152; *Rosenthal* v. *New York*, 226 U. S. 260; *M., K. & T. R. R. Co.* v. *Cade*, 233 U. S. 642; *Muller* v. *Oregon*, 208 U. S. 412; *Quong Wing* v. *Kirkendall*, 223

U. S. 59; *Hawley* v. *Walker*, 232 U. S. 718; *Wenham* v. *State*, 65 Neb. 394; *Commissioners* v. *Hamilton Mfg. Co.*, 120 Mass. 283; *State* v. *Buchanan*, 29 Wash. 602; *Withey* v. *Bloem*, 163 Mich. 419.) Reasonable grounds exist for believing night work is injurious to women and will bring grave results upon the state. The legislation should, therefore, be sustained. (*Holden* v. *Hardy*, 169 U. S. 366; *E. R. R. Co.* v. *Williams*, 233 U. S. 671; *Muller* v. *Oregon*, 208 U. S. 412; *People* v. *Havnor*, 149 N. Y. 195; *Lawton* v. *Steele*, 152 U. S. 133; *Health Dept.* v. *Rector*, 145 N. Y. 32; *People* v. *Dunford*, 207 N. Y. 17; *People* v. *Ewer*, 141 N. Y. 129.) Common knowledge and scientific fact have paved the way for this law prohibiting the night work of women. (*Holden* v. *Hardy*, 169 U. S. 366; *Ritchie* v. *Wayman*, 244 Ill. 509; *Ritchie* v. *People*, 155 Ill. 98; *People* v. *Chicago*, 256 Ill. 558.)

*Abram I. Elkus, Robert F. Wagner* and *Bernard L. Shientag* for New York State Factory Investigating Commission as *amicus curiæ.* Night work of women in factories is injurious to health, inimical to morals and destructive of the vitality of women as wives and mothers. (*Muller* v. *Oregon*, 208 U. S. 412; *Matter of Viemeister*, 179 N. Y. 235; *Tenement House Dept.* v. *Moeschen*, 179 N. Y. 325.) The prohibition by the legislature of night work of women in factories is valid as being a reasonable exercise of the police power of the state. (*Holden* v. *Hardy*, 169 U. S. 366; *Muller* v. *Oregon*, 208 U. S. 412; *Hawley* v. *Walker*, 232 U. S. 718; *C., B. & Q. R. R. Co.* v. *McGuire*, 219 U. S. 549; *People* v. *King*, 110 N. Y. 418; *People* v. *Ewer*, 141 N. Y. 129; *People ex rel. Nechamcus* v. *Warden*, 144 N. Y. 529; *People* v. *Havnor*, 149 N. Y. 195; *Matter of Viemeister*, 179 N. Y. 235.) Fixing a closing and opening hour is a reasonable means of securing the effective prohibition of continuous night shifts and prolonged overtime of women in factories. (*People*

v. *Williams,* 189 N. Y. 131; *Booth* v. *Illinois,* 184 U. S. 425; *Otis* v. *Parker,* 187 U. S. 606; *People ex rel. Silz* v. *Hesterberg,* 184 N. Y. 126; 211 U. S. 31; *Purity Extract & T. Co.* v. *Lynch,* 226 U. S. 192; *Riley* v. *Commonwealth,* 232 U. S. 671; *Jacobson* v. *Massachusetts,* 197 U. S. 11; *Bohmer* v. *Haffen,* 161 N. Y. 390.) The statute under consideration does not deny to women the equal protection of the law. (*Lochner* v. *New York,* 198 U. S. 45; *Muller* v. *Oregon,* 208 U. S. 412; *Hawley* v. *Walker,* 232 U. S. 718.)

Hiscock, J.  This appeal presents for consideration a question of the constitutionality of certain industrial legislation, so called.

It is undisputed that the appellant caused or permitted a married woman to work in a factory operated by it between the hours of ten o'clock in the evening and six o'clock in the morning, and thereby violated the provisions of the act above quoted, and became subject to the punishment duly prescribed for such violation.  It challenges, however, the legality of its conviction for the reason, as claimed, that said act unduly and unjustifiably interferes with the right of an adult woman to contract for her own labor, and thus violates various provisions of the Constitution both of the State and of the United States, which in effect provide that no one shall be deprived of life, liberty or property except by due process of law, and that no unjust discrimination shall be made between different classes of citizens by denial of the equal protection of law.

The answer to this challenge is that night work in factories as contrasted with day labor substantially affects and impairs the physical condition of women and prevents them from discharging in a healthful and satisfactory manner the peculiar functions which have been imposed upon them by nature, and that, therefore, it was within the power of the legislature to enact the stat-

ute as a police regulation tending to protect the well-being of a large class of citizens and promote the public welfare. We are, therefore, presented with the issue whether it can be said that night work by women in factories is so generally and substantially injurious to their health that the legislature was justified by public considerations in preventing the evil by forbidding the cause. In the determination of this question it will be well first to summarize some of the facts and reasons which induced the legislation, and, second, to test the sufficiency of these as a basis for the statute by certain principles of law applicable to such a case.

There are certain fundamental facts involved in the decision of the question which are beyond any dispute. The statute forbids night work simply in factories. We know as a matter of common observation that such labor is generally performed in-doors and that under average conditions and surroundings existing in factories, even when performed in the daytime, it is ordinarily arduous and exacting.

Impairment caused by exhaustion or even ordinary weariness must be repaired by normal and refreshing sleep and rest if health and efficiency are to be preserved. The natural and common order of work and rest is that the former shall be for the most part performed during the hours of day and the latter enjoyed during the night. Habitual and continuous work by night is at variance with this order.

Protection of the health of women is a subject of special concern to the state. However confident a great number of people may be that in many spheres of activity, including that of the administration of government, woman is the full equal of man, no one doubts that as regards bodily strength and endurance she is inferior and that her health in the field of physical labor must be specially guarded by the state if it is to be preserved and

26

if she is to continue successfully and healthfully to discharge the duties which nature has imposed upon her. This proposition is fully recognized and stated in *Muller v. Oregon* (208 U. S. 412, 421) where it was said: "That woman's physical structure and the performance of maternal functions place her at a disadvantage in the struggle for subsistence is obvious. This is especially true when the burdens of motherhood are upon her. Even when they are not, by abundant testimony of the medical fraternity continuance for a long time on her feet at work, repeating this from day to day, tends to injurious effects upon the body, and as healthy mothers are essential to vigorous offspring, the physical well-being of woman becomes an object of public interest and care in order to preserve the strength and vigor of the race.   *   *   * Differentiated by these matters from the other sex, she is properly placed in a class by herself, and legislation designed for her protection may be sustained, even when like legislation is not necessary for men and could not be sustained."

And if any further brief evidence of the truth of the proposition were necessary it would be found in the many statutes which have been adopted in this state without question of their constitutionality particularly designed to protect and preserve the health of women when engaged in various kinds of physical labor.

Moved in part it may be by such general and underlying considerations as these, under and in accordance with two statutes adopted by our legislature in 1911 and 1912 (Laws of 1911, chapter 501; Laws of 1912, chapter 21), there was appointed in the latter year a Factory Investigating Commission. This commission considered this subject of night work by women in factories and in 1913 made a report to the legislature, recommending that there be passed the law now before us prohibiting it. It reported that such prohibition was essential to protect and preserve the health and to some extent the morals

of women.   It stated: "The chief danger of health from night work is   *   *   *   due to the inevitable lack of sleep and sunlight.  Recuperation from fatigue takes place fully only in sleep, and best, in sleep at night. Hence, night work is, in a word, against nature. When exhausting factory work fills the night, and household work most of the day, health must inevitably be sacrificed. · This injury to health is all the greater, because sleep lost at night by working women is never fully made up by day.  For, in the first place, sleep in the daytime is not equal in recuperative power · to sleep at night.   *   *   *   Moreover, quiet and privacy for sleep by day is almost impossible to secure.  Upon returning home in the middle of the night or at dawn the workers can snatch at most only a few hours rest."

While it is impossible to review at length this report and recommendation and the foundations therefor, it may briefly and generally be stated that it was based upon and supported by quite an extensive investigation by the commission of actual factory conditions in this state where women performed night work, by many opinions of medical and other experts, and examination of other industrial investigations and legislation adopted in other jurisdictions in obedience we must assume to public opinion, forbidding such night work.  It was also supported, whether expressly so stated or not, by the general considerations first above set forth.  Amongst other things in the report to which special reference may be made, it appeared that in 1906 there assembled in Switzerland representatives of fourteen European governments who signed an international· convention for the prohibition of industrial work at night by women, and that prior to 1912 all of the powers represented except one had ratified the convention, and that in many cases such legislation provided for a longer period of rest at night than that recommended by the international agreement.  It

also appears now by the briefs submitted to us, whether that was stated in the report or not, that nine of the United States had passed legislation prohibiting such night work by women.

Thus at the time when this statute was adopted there was before the legislature the report of a commission created by it to consider and report on this subject, based on natural laws and on actual investigation, a large volume of expert and medical opinion and a large number of statutes adopted in various jurisdictions, all of which tended to show a careful and long-continued study and examination of the subject of night work by women, and as a result of such study and examination a widespread belief that such work was so injurious to their health that it ought to be prohibited both for their own sakes and for the sake of the offspring whom they might bear.

We then come to the query whether such facts, evidence and information furnished a sufficient reason for action by the legislature and justified the statute which was adopted, and I think the answer must be in the affirmative.

In the decision by the legislature whether it should adopt such legislation, and in the determination by us whether the legislature was justified in adopting it, that body was and we are entitled to take into account the report made by the commission, such facts tending to support it as were matters of common knowledge, and the widespread and long-continued belief evidenced by statutes and in other manners that night work by women in such a place as a factory is so injurious that grave dangers therefrom are to be apprehended.

In *Muller* v. *Oregon* (*supra*) it was said: "Constitutional questions, it is true, are not settled by even a consensus of present public opinion, for it is the peculiar value of a written constitution that it places in unchanging form limitations upon legislative action, and thus

1915.]                  Opinion, per HISCOCK, J.              [214 N. Y.]

gives a permanence and stability to popular government which otherwise would be lacking.  At the same time, when a question of fact is debated and debatable, and the extent to which a special constitutional limitation goes is affected by the truth in respect to that fact, a widespread and long continued belief concerning it is worthy of consideration.  We take judicial cognizance of all matters of general knowledge."  (p. 420.)

In *Matter of Viemeister* (179 N. Y. 235, 240), which considered the constitutionality of a statute passed in the exercise of the police power of the state concerning vaccination, it was said: "A common belief, like common knowledge, does not require evidence to establish its existence, but may be acted upon without proof by the legislature and the courts.  While the power to take judicial notice is to be exercised with caution and due care taken to see that the subject comes within the limits of common knowledge, still, when according to the memory and conscience of the judge, instructed by recourse to such sources of information as he deems trustworthy, the matter is clearly within those limits, the power may be exercised by treating the fact as proved without allegation or proof."

And again it was written in *Brown* v. *Piper* (91 U. S. 37, 42) that "Courts will take notice of whatever is generally known within the limits of their jurisdiction."

The knowledge and information before the legislature which it was thus entitled to consider presented to it a subject of general interest and public concern which justified consideration and legislation.  It warranted the belief that night work by women in factories is generally, substantially and especially detrimental to their health, and surely it is a matter of vital importance to the state that the health of thousands of women working in factories should be protected and safeguarded from any drain which can reasonably be avoided.  This not only for their own sakes but, as is and ought to be constantly

and legitimately emphasized, for the sake of the children whom a great majority of them will be called on to bear and who will almost inevitably display in their deficiencies the unfortunate inheritance conferred upon them by physically broken down mothers.

The legislature was justified in preventing any such evils as those which were outlined, both real and fairly to be anticipated, by any legislation which reasonably tended to prevent them, and it had a wide discretion in formulating the means which it would adopt to this end. (*People ex rel. Nechamcus* v. *Warden, etc.*, 144 N. Y. 529, 535; *People* v. *Ewer*, 141 N. Y. 129.)

It was a sufficient basis in that respect for action if only there were reasonable grounds for belief that such labor was thus injurious, even though there was an "earnest conflict of serious opinion" on the subject. (*Holden* v. *Hardy*, 169 U. S. 366, 395; *Erie Railroad Co.* v. *New York*, 233 U. S. 671, 699.)

The only question then left is the one whether the legislature was justified in going so far as to prohibit night labor in factories between the hours named by it as a means of promoting the public welfare by averting the actual or apprehended misfortune of broken health of working women. There are well-established general rules by which to test this question.

In considering legislation adopted for such a purpose we must start out with the presumption that it is constitutional and valid. (*People ex rel. Kemmler* v. *Durston*, 119 N. Y. 569, 577.) If the statute upon its face appears to be reasonable and just and appropriate, and we can fairly believe that its natural consequences will be in the direction of betterment of public health and welfare, and, therefore, that it is one which the state for its protection and advantage may enact and enforce, it will be the duty of the courts to pronounce it constitutional even though they should doubt its wisdom. (*People* v. *Klinck Packing Co.*, 214 N. Y. 121; *Holden* v. *Hardy*, 169 U. S. 366,

395.)  Or, to state the rule in converse form, before we can pronounce such a statute as that now before us unconstitutional we must be able to see either that there is no real, substantial evil of public interest to be guarded against or that there is no reasonable relation between the evil and the purported cure or prevention offered by the statute.  (*Booth* v. *Illinois*, 184 U. S. 425; *Chicago, B. & Q. R. R. Co.* v. *McGuire*, 219 U. S. 549.)

It is not a basis for a constitutional objection to a statute like this generally prohibiting the labor of women between certain hours that in exceptional cases it may prevent employment of some women for a short time between those hours under such conditions as would be productive of no substantial harm.  A legislature must legislate in general terms, and its mandates are not constitutionally vulnerable because having power to act concerning a certain subject and to legislate in terms reasonably calculated to accomplish the general purpose within the scope of its authority, it covers and prohibits some isolated transaction which by itself would be harmless and unobjectionable.  (*Purity Extract & Tonic Co.* v. *Lynch*, 226 U. S. 192; *People ex rel. Hill* v. *Hesterberg*, 184 N.Y. 126, 131; *Otis* v. *Parker*, 187 U. S. 606.)

Neither is it an effective objection to a statute if some of those who will be protected by its provisions oppose such protection, for the state has such an interest in the welfare of its citizens that it may if necessary protect them against even their own indifference, error or recklessness.  (*Holden* v. *Hardy*, 169 U. S. 366; *Hennington* v. *Georgia*, 163 U. S. 299.)  Nor if some cases which might have been included are omitted, for police legislation may rest on narrow distinctions.  (*Keokee Cons. Coke Co.* v. *Taylor*, 234 U. S. 224; *German Alliance Ins. Co.* v. *Kansas*, 233 U. S. 389.)

Tested and fortified by these rules, we cannot and ought not to say that the legislature did not act within

the wide powers of discretion and judgment possessed by it in adopting the prohibition which it did as a means of preventing the evils with which it was justified in believing the state to be threatened as the result of such night work by women.

There can be no doubt that the means adopted tended to prevent the apprehended danger. The only chance for debate would be whether the prohibition is so wide and so universal that it can be said that it is so out of proportion to the benefits sought that it is burdensome and unreasonable to a degree which transcends the discretion of the legislature. We feel sure this cannot be said. What is reasonable and appropriate in such a matter must be largely decided by prevailing opinion and judgment, and by reference to what has been and is being done with approval by this and other states and countries in the same and similar matters, and, as has been pointed out, there is no lack of support in such respects for the present enactment. If it is proper, as it certainly has been held to be both by widely held public opinion and by the decisions of the Supreme Court of the land, to protect the health of woman by restricting the hours during which she may labor in certain pursuits, it cannot be said as a matter of constitutional law that it is illogical and improper for the legislature to take the further step, which it now has taken, and say that those hours of labor must not be performed at times and under conditions which as a matter of general experience tend generally and substantially to break down the health of the laborer. It requires no very great exercise of judgment and discretion to justify this additional forward step in protective regulation, and it seems to us to be within the power possessed by the legislature. Of course we are well aware that the process of justifying a new step by the fact that it marks but a short advance over the last preceding one if continued long enough may lead to extremes which cannot be approved. But while we may

appreciate that possibility, we only have before us now the specific advance taken by this particular statute, and as we have indicated we think that it is not only not condemned by the test of all the facts and principles of law which are applicable, but is supported and sustained by them.

Various other grounds have been urged upon our attention as ones upon which the constitutionality of the statute might rest. They have not been overlooked, but it is deemed unnecessary to consider them in view of our conclusion in respect of the question which has been discussed.

Therefore, we conclude the statute is constitutional as a police regulation in the interest of public health and the general welfare of the people of the state.

In reaching the conclusion above set forth we have not overlooked or failed to consider the forcibly expressed argument of the appellant that we have been passing through days when many people were prodigal in their generous willingness to devise statutory cures for other people who neither demanded, desired or needed them, and that this statute in its universal application to all factories will inflict unnecessary hardships on a great many women who neither ask nor require its provisions by depriving them of an opportunity to earn a livelihood by perfectly healthful labor although performed during some of the hours of the night. There may or may not be force in some of these arguments. They are of the kind which involve questions of discretion, judgment and public policy and must be addressed to the legislature. To put the proposition in a little different way than it is ordinarily stated the question before us is really whether the facts and considerations before and within the knowledge, actual and theoretical, of the legislature, gave them jurisdiction to decide that night work in factories generally was or might be so injurious to the health of women engaged therein that it should be prohibited in

the interest of public health and welfare.    If, as we have
held to be the case, such facts and information did give
it jurisdiction to act, the selection of the method and
extent of its action was largely within its discretion and
not to be reviewed by us.    If it be the actual case that
this law as a matter of fact does bear too severely on cer-
tain classes of night-working women, the legislature
ought to be open to argument in favor of appropriate
modifications of and exceptions to the present statute such
as they have made in the case of other industrial statutes.
(*People* v. *Klinck Packing Co.*, 214 N. Y. 121.)    At any
rate, it ought not to be expected that this court will seek
to offset the errors in judgment of the legislature, if any
there be, in the case of such legislation by straining to
overcome the presumption of validity which attaches to
such a measure when it comes from the hands of the law-
making body and by affixing the stamp of unconstitution-
ality unless it is clearly called for.

Lastly, it is urged that whatever might be our original
views concerning this statute, our decision in *People* v.
*Williams* (189 N. Y. 131) is an adjudication which ought
to bind us to the conclusion that it is unconstitutional.
While it may be that this argument is not without an
apparent and superficial foundation and ought to be fairly
met, I think that a full consideration of the *Williams*
case and of the present one will show that they may be
really and substantially differentiated and that we should
not be and are not committed by what was said and
decided in the former to the view that the legislature
had no power to adopt the present statute.

The statute under consideration in the *Williams* case,
like the present one, prohibited night work by women in
factories, and while its provisions were somewhat more
drastic than those of the present one, it may be conceded
that these differences were of details and would not serve
to distinguish that statute from the present one in respect
of its constitutionality.    But the facts on which the

former statute might rest as a health regulation and the arguments made to us in behalf of its constitutionality were far different than those in the present case.

That statute bore on its face no clear evidence that it was passed for the purpose of protecting the health and welfare of women working in factories, and while of course the presence or absence of such a label would not be controlling in determining the purposes and validity of the statute, it still was in that case an incident of some importance as leading to the conclusions finally expressed by Judge GRAY and adopted by the court as appears by the quotations from his opinion hereafter made.

While theoretically we may have been able to take judicial notice of some of the facts and of some of the legislation now called to our attention as sustaining the belief and opinion that night work in factories is widely and substantially injurious to the health of women, actually very few of these facts were called to our attention, and the argument to uphold the law on that ground was brief and inconsequential.

Especially and necessarily was there lacking evidence of the extent to which during the intervening years the opinion and belief have spread and strengthened that such night work is injurious to women; of the laws, as indicating such belief, since adopted by several of our own states and by large European countries, and the report made to the legislature by its own agency, the factory investigating commission, based on investigation of actual conditions and study of scientific and medical opinion that night work by women in factories is generally injurious and ought to be prohibited.

The failure adequately to fortify and press upon our attention the constitutionality of the former law as a health and police measure and to sustain its constitutionality by reference to proper facts and circumstances is sufficiently evidenced by what was said by Judge GRAY: "I find nothing in the language of the section which

suggests the purpose of promoting health, except as it might be inferred that for a woman to work during the forbidden hours of night would be unhealthful. If the inhibition of the section in question had been framed to prevent the ten hours of work from being performed at night, or to prolong them beyond nine o'clock in the evening, it might, more readily, be appreciated that the health of women was the matter of legislative concern. That is not the effect, nor the sense, of the provision of the section with which, alone, we are dealing.  *  *  *  If this enactment is to be sustained, then an adult woman, although a citizen and entitled as such to all the rights of citizenship under our laws, may not be employed *  *  * in any factory for any period of time  *  *  *· if it is within the prohibited hours; and this, too, without any regard to the healthfulness of the employment." (p. 134.)

So, as it seems to me, in view of the incomplete manner in which the important question underlying this statute — the danger to women of night work in factories — was presented to us in the *Williams* case, we ought not to regard its decision as any bar to a consideration of the present statute in the light of all the facts and arguments now presented to us and many of which are in addition to those formerly presented, not only as a matter of mere presentation, but because they have been developed by study and investigation during the years which have intervened since the *Williams* decision was made. There is no reason why we should be reluctant to give effect to new and additional knowledge upon such a subject as this even if it did lead us to take a different view of such a vastly important question as that of public health or disease than formerly prevailed. Particularly do I feel that we should give serious consideration and great weight to the fact that the present legislation is based upon and sustained by an investigation by the legislature deliberately and carefully made

through an agency of its own creation, the present factory investigating commission.

I, therefore, think that the order appealed from should be affirmed.

CHASE, HOGAN, MILLER and CARDOZO, JJ., concur; WILLARD BARTLETT, Ch. J., concurs in the result and in that part of the opinion which discusses the *Williams* case; COLLIN, J., not voting.

Order affirmed.