THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* Mrs. HENRY T. BROWN (ELOISE BROWN), Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* GEORGE BOHNKE, Appellant.

County Court, Suffolk County, March 4, 1941.

*Joseph G. Glass* and *Elliot W. Isaacson*, for the appellants.

*William B. Platt, Jr.*, for the Village of Southampton.

*Fred J. Munder, District Attorney*, for the respondent.

HILL, J. The defendants were convicted of violating village ordinance No. 28 of the village of Southampton, Suffolk county, N. Y., which ordinance reads as follows:

" Solicitors, etc., on Private Property. No person shall enter upon any private residential property in the Village of Southampton, Suffolk County, New York, for the purpose of vending, peddling, or soliciting orders for any merchandise, device, book, periodicals or printed matter whatsoever; nor for the purpose of soliciting alms, or a subscription or a contribution to any church, charitable or public institution whatsoever; nor for the purpose of distributing any handbill, pamphlet, tract, notice or advertising matter, nor for the purpose of selling or distributing any ticket or chance whatsoever, without the consent of the occupant of said premises previously given.

" Nothing herein contained shall be construed to apply to any person who has been a *bona fide* resident of the Village of Southampton, New York, for a period of at least six (6) consecutive months last past, nor to any person who has maintained a place of business in the Village of Southampton for a period of at least six (6) consecutive months, prior thereto, or his duly authorized representative. Any person violating this ordinance shall be subject to a penalty of not more than One Hundred ($100.00) Dollars for each violation thereof.

" Any violation of this ordinance shall constitute disorderly conduct, and the person violating the same shall be a disorderly person."

Southampton village and the surrounding community is well known throughout the world as a summer colony for the wealthy. It is common knowledge that the rotogravure sections of our leading newspapers carry many pictures depicting the elite and socially prominent persons of the country at play in Southampton during the summer season. Consequently Southampton is a village of

beautiful homes with spacious lawns and gardens. In the past, jewel robbers have preyed on the summer residents of Southampton, creating a serious problem for the local police and others in authority.

To help correct this evil Southampton ordinance No. 28 was passed and became law. This law attempted to prohibit strangers from distributing pamphlets or advertising matter without first obtaining the consent of the occupant of the premises. This statute did not affect residents who had been residents for a period of at least six months last past or any person who had maintained a place of business for a like period.

The defendants were distributing religious literature by leaving the same on the front porch, door mat, or other convenient place at the houses in the village at five o'clock in the morning, and when informed by the police of the ordinance refused to discontinue the undertaking, saying that they were protected by the Federal Constitution; that to prevent them from carrying on their avocation or occupation of serving the Master was in violation of the Fourteenth Amendment of the Constitution.

The defendants raised three points in their argument on appeal, as follows:

1. The ordinance as construed and applied is void because it deprives the defendants of their right of freedom of speech and of press and freedom to worship Almighty God as commanded by Him in the Bible and according to the dictates of conscience, all in violation of section 1, Fourteenth Amendment, United States Constitution.

2. The ordinance is void on its face because it deprives the defendants of equal protection of the laws and of due process of law in violation of section 1, Fourteenth Amendment, United States Constitution, in that the ordinance is unreasonable, discriminatory, and arbitrarily deprives persons of liberties, privileges, and immunities constitutionally guaranteed and secured, and amounts to legislation by individuals rather than by the constituted authority because the ordinance can or cannot have effect according to the pleasure of individual occupants of premises.

3. The ordinance is unconstitutional and repugnant to section 1, Fourteenth Amendment, United States Constitution, because it imposes an improper classification predicated upon residence and in operation is unreasonable and because of lack of rational connection between the interdiction of the ordinance and the end ostensibly sought to be accomplished, so that it cannot be justified as an exercise of the police power.

The police power is very broad, and necessarily so, and certainly the police power is broad enough to give a local legislative body

of any community the right to protect its citizens, and the only question is whether or not this local ordinance is discriminatory in that it exempts local residents. It makes it very difficult for the police where a person, under the guise of distributing literature or otherwise, can go from house to house, leave the road or sidewalk and go to a person's front door with pamphlets. Of course, most people are not criminals and would do this with honest motives and good intentions, but I believe the courts should take judicial notice of the fact also that there are some persons living in these United States who are criminals, and very dangerous ones. Residents should be protected against the kidnapper and the highwayman, and where would the kidnapper and the jewel thieves operate? Certainly not in the slums, but in a place like Southampton. The exercise of any police power limits individual freedom. Some do not like the Legislature of our State to. fix a speed limit on the highways, yet the speed limit and regulation is not fixed and enforced for those who drive in a careful and prudent manner but for the reckless few, and I believe the defendants in this case should recognize that they owe to society the giving up of a little freedom for the benefit of all the persons in the community. And certainly no one will argue that if the police have the power to arrest any one who violates ordinance No. 28, and question him as to his residence and business and from where he came, it is a very powerful weapon in discouraging criminals. (*Bryant* v. *Zimmerman*, 278 U. S. 63.) The local legislature of the village of Southampton in its wisdom has found that six months' residence is sufficient for the purpose at hand, and the court should not find fault with the legislature's wisdom if it is reasonable. (*Brown-Forman Co.* v. *Kentucky*, 217 U. S. 563.)

The Legislature is justified in guarding against any evil which may be fairly anticipated, and it has wide discretion in deciding what means to be used, and unless the means used to correct the evil are unduly oppressive and confiscatory, the courts will not interfere. (*People* v. *Schweinler Press*, 214 N. Y. 395; *People* v. *Griswold*, 213 id. 92; *Matter of Stubbe* v. *Adamson*, 220 id. 459.)

The other point raised on appeal, namely, that the defendants were denied their right of freedom of speech and of the press and freedom to worship Almighty God as dictated to them by their conscience and guaranteed by the Fourteenth Amendment to the United States Constitution, is a much more serious matter. In this twentieth century, when so few people are effusive about their religion, those who are should be encouraged, and I believe every fair-minded individual, whether a communicant at any temple of religion or not, respects and admires those who practice their

religion faithfully. There is not any doubt that the defendants are enthused with their religious beliefs and are ready to sacrifice themselves in spreading it. There is not any question in any one's mind about the honesty of purpose of the defendants or their freedom from any nefarious scheme. What they were doing was undoubtedly harmless. Maybe it did a lot of people good, but the police too do a lot of good in another way, and in performing their duty as such the defendants cannot complain providing the police acted within the law of the land.

Whether the enactment of the ordinance is wise or unwise, whether it is the best approach to the evident danger, is a matter for the judgment of the legislature, and if they drew the ordinance within the Constitution, then the court will not interfere. (*German Alliance Ins. Co.* v. *Lewis*, 233 U. S. 389.)

The Fourteenth Amendment guarantees the equal protection of the law. Laws are not abstract propositions in themselves, but are expressions of policy based upon the will and needs of the people. The classification in favor of residents is not a new proposition, and the legislative body of the village of Southampton has the power to make residence a qualification. It was held in the case of *Tigner* v. *Texas* (310 U. S. 141) that the Legislature has the power to exclude farmers and stockmen from the criminal statute against combination and monopoly, and certainly it is no more discriminatory to prohibit strangers from going to a person's house for the purpose of soliciting or leaving pamphlets without previous permission than it is to discriminate against a class.

The rights of the individual are not absolute. They are subject to the exercise of the regulatory powers of government. The State may enact laws regulating, restraining and prohibiting, although such regulation, restraint or prohibition interferes with, curtails or diminishes personal rights.

Judgment affirmed.