8 N.Y.2d 197 (1960)
National Psychological Association for Psychoanalysis, Inc., et al., Appellants,
v.
University of the State of New York, Respondent.
Court of Appeals of the State of New York.
Argued June 6, 1960.
Decided July 8, 1960.
Osmond K. Fraenkel and Lyman Stansky for appellants.
Louis J. Lefkowitz, Attorney-General (Samuel A. Hirshowitz, Paxton Blair and Philip Watson of counsel), for respondent.
John H. Mariano for New York State Psychological Association, Inc., amicus curiæ.
Chief Judge DESMOND and Judges DYE, FULD, BURKE and FOSTER concur with Judge FROESSEL; Judge VAN VOORHIS concurs on the assumption that this statute affects the use of the title "psychologist" only in conjunction with services rendered to individuals in the solution of personal problems or treatment of illness.
*200 FROESSEL, J.
The constitutionality of article 153 (§§ 7601-7614) of the Education Law (L. 1956, ch. 737), which deals with the certification of psychologists, was unsuccessfully challenged by plaintiff membership corporation, dedicated to the advancement of psychoanalysis (herein called NPAP), and four of its members, each of whom has since been certified under the statute. Since the question involved is of important public interest and one likely to arise again, we deem it appropriate to entertain the appeal on the merits (Matter of United Press Assns. v. Valente, 308 N.Y. 71, 76).
Drafted by State agencies and interested professional groups, and widely approved by the psychological fraternity (see Governor's Message, Public Papers of Governor Harriman, 1956, pp. 416-417; Memoranda of Education Department, N. Y. Legis. Ann., 1956, pp. 214-215, and Mental Hygiene Department, McKinney's 1956 Session Laws, pp. 1928-1929), article 153 is a certification rather than a licensing law, i.e., it does not prohibit anyone from rendering psychological services, but proscribes the professional use by noncertificants of the title "psychologist" and its derivatives, for remuneration. Section 7602 prohibits noncertified individuals from representing themselves as psychologists, and section 7601 defines a person who *201 "represents himself to be a `psychologist'" as one who "holds himself out to the public by any title or description of services incorporating the words `psychological', `psychologist' or `psychology', and under such title or description offers to render or renders services to individuals, corporations, or the public for remuneration." (Emphasis supplied.)
Section 7605 empowers the Department of Education to issue "a certificate as psychologist" to a citizen (or one who has declared his intention), of good moral character, at least 21 years of age, who pays a $40 fee, "passes a satisfactory examination in psychology", has "received the doctoral degree based on a program of studies whose content was primarily psychological from an educational institution having a graduate program registered by the department, or its substantial equivalent in both subject matter and extent of training" (emphasis supplied), and has had "at least two years of satisfactory supervised experience in rendering psychological services". For a specified period, the board is empowered to waive examination for those meeting prescribed standards of academic achievement and professional experience.
The statute further provides for biennial registration of certified psychologists (§ 7606); nondisclosure of privileged communications (§ 7611); and revocation or suspension of certificates, after notice and hearing before the Commissioner of Education, with the right of judicial review by way of an article 78 proceeding of the suspension, revocation, "or refusing to issue or renew a certificate" (§ 7607). Employees of governmental agencies and chartered educational institutions are exempt from the operation of the statute (§ 7609); the practice of medicine is not authorized (§ 7610); and violation of the statute is made a misdemeanor (§ 7608).
Article 153 was designed to accomplish a two-fold purpose. On the one hand, it "recognizes and gives status to the profession of psychology" (Governor's Message, supra) by "giving qualified psychologists official recognition" (Memo., Mental Hygiene Dept., supra), and by placing the "confidential relations and communications" between a registered psychologist and his client "on the same basis as those provided by law between attorney and client" (§ 7611). In this aspect, its sponsors felt that the statute would encourage bona fide psychologists *202 with university training and professionally supervised experience to offer their needed professional services to the public in increasing numbers.
On the other hand, it was "apparent to all who are concerned with the field of public health that the public [was] entitled to protection in the form of state supervision" over the increasingly important field of psychology (Memo., Education Dept., supra). By prohibiting the use of the word "psychologist" and its variants in connection with the rendition of professional services for pay, it was felt that the statute would "make it possible to eliminate unqualified persons who are presently able to hold themselves out to the public as psychologists" (Memo., Education Dept., supra), and help to protect the public against charlatans and quacks who, despite inadequate training and professional experience, guarantee easy solutions to psychological problems.[1]
Aside from the presumption of constitutionality which must be accorded a legislative enactment (Lincoln Bldg. Associates v. Barr, 1 N Y 2d 413, 415), it cannot be gainsaid that the statute is reasonably related to the public health and welfare, and thus constitutes a proper exercise of the State's police power under the due process clause of the State and Federal Constitutions. Through the medium of official certification of qualifications, it helps the public to identify those who have appropriate training and background in the profession of psychology. At the same time, it affords protection against the incompetent practitioner by providing a yardstick by which the public can judge the competence of persons offering psychological services.
We have upheld the certification as opposed to the complete licensing approach in the fields of accountancy (Berkowitz v. Wilson, 307 N.Y. 851), and plumbing (People ex rel. Nechamcus v. Warden of City Prison, 144 N.Y. 529), and, as stated in the latter case (pp. 538-539), "if the act is a step in the direction of something which will enure to the public health and comfort, that it does not go as far as it might, is not a reason for invalidating *203 it"[2]. Since "we may not, of course, substitute our judgment for that of the Legislature as to the wisdom or expediency of the legislation" (Thompson v. Wallin [and two companion cases], 301 N.Y. 476, 488, affd. 342 U. S. 485, 801, 951), the strong convictions expressed by plaintiffs against the soundness and efficacy of the statute have no bearing on its constitutionality (see Beauharnais v. Illinois, 343 U. S. 250, 262; People v. Schweinler Press, 214 N.Y. 395, 406-407, appeal dismissed 242 U. S. 618).
The constitutional arguments pressed on this appeal revolve around the fact that the statute does not contain a formal definition of "psychologist" or its proscribed derivatives. Plaintiffs contend that the absence of such a definition renders the statute violative of due process in two respects: (1) it arbitrarily restricts the carrying on of a lawful occupation in that it prohibits a noncertified psychologist from truthfully describing his professional services, and (2) the statute's qualifying standards are meaningless without a definition to which they can attach, and hence the statute unlawfully delegates legislative power without accompanying standards to guide the exercise of administrative discretion.
The omission of a formal definition of "psychology" or its variants was no legislative oversight. Attempts to draft a definition that would sufficiently delineate the nature and scope of psychology had failed (Memos., Mental Hygiene and Education Depts., supra), and, as noted by Special Term, "the law was enacted in a form that was acceptable to interested groups and that requires no interpretation of that term for its enforcement". The standards of fitness established by the Legislature imbue the title "psychologist" with meaningful content, and a person with a bona fide claim to that title will meet those qualifications and be accorded official recognition, as were the individual plaintiffs herein. To "assure adequate representation of the diverse fields of psychology" on the State Board of Examiners, the Legislature specifically provided that "the board shall at all times, except for vacancies, have two members *204 representing the training institutions in psychology, three members who engage in rendering service in psychology and two members who devote a majority of their time to rendering service in psychology" (§ 7603). The membership of the Advisory Council established by the Legislature to "aid in the formulation of policy" was likewise apportioned among professional practitioners and "representatives of the professional training centers" to insure that it would be "broadly representative of psychology" (§ 7604).
That the Legislature assigned to respondent the task of implementing the statute  by recognizing accredited psychology courses in the graduate curriculums of chartered institutions, by determining the scope of the qualifying examination, by fixing the "substantial equivalent" of a doctoral degree, and by deciding what constitutes "satisfactory supervised experience"  does not constitute an invalid delegation of legislative power (Matter of Marburg v. Cole, 286 N.Y. 202, 211-212; Matter of City of Utica v. Water Pollution Control Bd., 5 N Y 2d 164). The statute prescribes clearly discernible standards to govern the exercise of the power of certification, and it was "proper and fitting for the Legislature to assign broad functions to the Board, particularly when it was contemplated and understood that its members were to bring to their work a familiarity with conditions which the individual legislators could not be expected to possess." (Matter of City of Utica v. Water Pollution Control Bd., supra, p. 170.)
While plaintiffs maintain, on the one hand, that there is as yet "no unified concept of what psychology is", nor a "generally accepted definition of psychology, psychologists or psychological services", they nonetheless contend, on the other hand, that the constitutional infirmity in the statute lies in its failure to define those very terms. They recognize that the profession of psychology is affected with a public interest, and hence subject to regulation under the police power. Yet the end result of their argument is that the Legislature may not constitutionally regulate psychologists, since the title and the field are incapable of precise definition, and a statute without such definition is invalid.
The short answer to this thoroughly untenable argument is that section 7605, in practical effect, defines a psychologist as *205 an individual who meets prescribed standards of fitness, and since the statute merely proscribes the use of specific words to describe the rendition of services, without making it criminal for noncertificants to render such services, no further definition of that term is constitutionally required or necessary (see Pitts v. State Bd. of Examiners of Psychologists, 222 Md. 224, 227). The statute is easily complied with by the nonuse of particular words, and hence it completely "satisfies the requirement that a criminal statute must be sufficiently definite, `clear and positive' to give `unequivocal warning' to citizens of the rule which is to be obeyed" (People v. Firth, 3 N Y 2d 472, 474).
Plaintiffs' real quarrel with the statute is not that it lacks a formal definition of "psychologist", but that the definition adopted  by way of qualifying standards  does not meet with their approval. NPAP conducts a training program for members in training, and respondent has refused to accept that program as satisfying the academic requirements of the statute, contrary to NPAP's expectation at the time it supported the statute. The major portion of plaintiffs' affidavits, as well as their complaint, is devoted to the merits of NPAP's training program, and why it should qualify as a "substantial equivalent" of "the specialized advanced courses in psychological theory and professional skills in a typical graduate psychology program given by degree-granting institutions leading to a degree of Doctor of Philosophy in psychology". However, a disagreement with the judgment of the Legislature as to the proper standards of fitness for persons wishing to be certified in their craft cannot rise to the level of a constitutional argument by couching that disagreement in the language of due process or equal protection of the laws. If certification is denied to one of NPAP's members, and he can establish that respondent's refusal to accept his training as a "substantial equivalent" of formal university training was an arbitrary abuse of administrative discretion, then he may obtain the necessary relief in the courts by way of an article 78 proceeding (§ 7607, subd. 3; see Matter of Marburg v. Cole, supra).
As to plaintiffs' contention that "the issue of constitutionality cannot be determined without a trial"  which is inconsistent with their motion for summary judgment  the issues of fact *206 which assertedly exist all go to the wisdom and efficacy of the statute, and have no bearing on its constitutionality.
The judgment should be affirmed, with costs.
Judgment affirmed.
NOTES
[1] See note, 51 Col. L. Rev. (1951) 474, which points up "the selling power of the term `psychologist' and its variants" and the importance, in terms of practical protection to the public, of proscribing "the professional use by noncertificants of the very terms which have apparently captured the popular imagination" (pp. 484-485).
[2] See, also, former article 56 of the Education Law (§§ 1475, 1476, added by L. 1927, ch. 85, and derived from former §§ 77, 77-a of the General Business Law), which, as noted in Roth v. Hoster Realty Co. (119 Misc. 686), was "directed solely against the assumption of the title architect or registered architect" (emphasis supplied), and did "not forbid the practice of the profession or occupation generally."